**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

M. SMITH, Parent and Natural )
Guardian of minor, C.S., )
                         Plaintiff, )
                          )
     vs. )
                          )                Case No. 17-02235-JTM-GEB
TFI FAMILY SERVICES, INC., )
                   Defendant. )
_____ )

R. SHADDEN, Parent and Natural )
Guardian of minor, G.S., )
                          Plaintiff, )
     vs. )                Case No. 17-02236-JTM-GEB
                          )
TFI FAMILY SERVICES, INC., )
                   Defendant. )
_____ )

## MEMORANDUM AND ORDER

On May 8, 2018, the Court convened an in-person motion hearing to address (1) The Kansas Department for Children and Families' (DCF) Amended Motion to Quash Subpoena (**ECF No. 39**)[1] and Memorandum in Support (ECF No. 40) and (2) Plaintiffs' Motion to Compel Against TFI Family Services, Inc. (TFI) (**ECF No. 59**) and Memorandum in Support (ECF No. 60).[2]   DCF appeared through counsel, Corliss Scroggins Lawson.  Plaintiffs appeared through counsel, Michaela Shelton.  Defendant TFI, appeared through counsel, David R. Cooper.  After review of the parties' written

---

[1] Due to DCF filing the Amended Motion to Quash, the Court finds the original motion filed at ECF No. 37 MOOT.
[2] The Court also heard argument on Plaintiff's Motion to Disqualify Counsel (ECF No. 62).  The Court denied the Motion at the hearing and will enter a separate written order regarding that ruling. (*See* Order, ECF No. 79).

briefs, attached exhibits, and certificates of compliance (ECF Nos. 39, 40, 42, 43, 59, 60, 69, 76, and 81-84), hearing arguments of counsel, and extensive discussion between counsel and the Court regarding the discovery disputes, the Court is prepared to rule.  For the reasons set forth below, DCF's Amended Motion to Quash Subpoena is **GRANTED IN PART AND DENIED IN PART** and Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART.**

I.    **Background**

A.    **Nature of the Case[3]**

These cases were brought on behalf of two minor children, C.S. and G.S., who claim to have suffered abuse after being placed in a foster care home by TFI.[4]  TFI is a private company that formerly contracted with DCF to provide placement services for children in state custody.[5]  Plaintiffs allege TFI is liable for compensatory and punitive damages for constitutional and state law tort violations.[6]

G.S. and C.S., in 2007 and 2008 respectively, were placed in DCF custody.[7]  Shortly thereafter, DCF referred each minor to TFI for placement services.[8]  TFI placed G.S. in the home of Delores and Earl Wilkins (Wilkins' Home) from January 2008 to June 2009.[9]  TFI

---

[3] The information in this section is taken from the Complaints and Answers filed in Case Nos. 17-2235 and 17-2236. This background information should not be construed as judicial findings or factual determinations.  Unless otherwise noted, the ECF numbers referred to herein come from Case No. 17-2235.

[4] The two cases involve nearly identical complaints by two children placed in the same foster home.  The cases have been consolidated for purposes of discovery.

[5] Answer, ¶ 2, ECF No. 41.

[6] Complaint, ¶¶ 68-124, ECF No. 1; Complaint, ¶¶ 68-123, ECF No. 1 (Case No. 17-2236).

[7] Complaint, ¶ 45, ECF No. 1 (Case No. 17-2236); Complaint, ¶ 45, ECF No. 1.

[8] Complaint, ¶ 46, ECF No. 1 (Case No. 17-2236); Complaint, ¶ 46, ECF No. 1.

[9] Complaint, ¶ 51, ECF No. 1 (Case No. 17-2236).

placed C.S. in the Wilkins' Home from October 2008 through mid-2009.[10]  Both minors allege they suffered physical and emotional abuse in the Wilkins' Home.[11]

Based on hotline calls, reports from other foster children and reports from G.S. and C.S. themselves, Plaintiffs claim TFI knew, or should have known, abuse was occurring at the Wilkins' Home, but recklessly choose to place G.S. and C.S. there anyway.[12]  Plaintiffs further allege TFI  has a conscious disregard for the safety of children placed in its care, as reflected by a custom and practice of making inappropriate placements in foster homes and of disbelieving reports of abuse by foster children.[13]  TFI denies these allegations.[14]

### B.    Procedural Posture

Plaintiffs filed their Complaints on April 23, 2017.[15]  The cases were consolidated for discovery purposes on August 8, 2017.[16]  On September 22, 2017, the Plaintiffs and TFI entered an agreed Protective Order.[17]  And, as will be relevant to the discussions below, the parties agreed at paragraph 19 of the Protective Order that TFI would submit confidential agency records to the Court for an in-camera review pursuant to K.S.A. § 38-2212(e) before production to Plaintiffs.[18]

---

[10] C.S.'s Complaint states she resided in the Wilkins' Home until May of 2009.  (ECF No. 1, ¶ 51).  In its Response to Plaintiff's Motion to Compel, TFI states C.S. resided there until October of 2009.  (ECF No. 69, pp. 2-3).

[11] Complaint, ¶ 51, ECF No. 1 (Case No. 17-2236); Complaint, ¶ 51, ECF No. 1.

[12] Complaint, ¶¶ 53, 68-121, ECF No. 1; Complaint, ¶¶ 53, 68-120, ECF No. 1 (Case No. 17-2236).

[13] Complaint, ¶¶ 56-67, ECF No. 1; Complaint, ¶¶ 56-67, ECF No. 1 (Case No. 17-2236).

[14] *See generally* Answer.  (ECF No. 41; Case No. 17-2236, ECF No. 24).

[15] ECF No. 1; ECF No. 1 (Case No. 17-2236).

[16] Order of Consolidation (ECF No. 14; Case No. 17-2236, ECF No. 12).

[17] ECF No. 26.

[18] *Id.*

On October 19, 2017, the Court entered a Scheduling Order setting discovery and other pre-trial deadlines.[19]  Shortly thereafter TFI's motions to dismiss were denied,[20] discovery ensued, and the instant motions were filed in the course of discovery.

### C.    Motions at Issue

### 1.    DCF's Amended Motion to Quash Subpoena (ECF No. 39)

The Amended Motion to Quash Subpoena stems from Plaintiffs' November 2, 2017 subpoena to DCF and the Kansas Department of Health and Environment (KDHE).[21]  In that subpoena, Plaintiffs seek the following categories of documents from DCF: (1) contracts between TFI and DCF from 2007 to 2010; (2) the entire foster care file for Delores Jean "Dee" Wilkins, Earl Wayne Wilkins, and the Wilkins' Home; (3) the entire files for Plaintiffs G.S. and C.S. and five other specific foster children who are not subject to this litigation; their initials are J.F., L.W., T.B.-W., C.N. and K.L.; (4) the entire KDHE file related to KDHE administrative cases filed against TFI by KDHE from 2005 to 2012; (5) DCF's policy and procedure manuals in effect from 2007 to 2009; and (6) the files of children who were the subject of the previously referenced KDHE actions against TFI.[22]

### a.    Duty of Confer

The Court directed Plaintiffs and DCF to fully confer as required by D. Kan. Rule 37.2[23] before the May 8, 2018 hearing.  A Certificate of Compliance was filed on May 7,

---

[19] ECF No. 29.
[20] ECF No. 34; ECF No. 23 (Case No. 17-2236).
[21] ECF No. 42-1.
[22] *Id.*
[23] D. Kan. Rule 37.2 states the court will not entertain a motion to quash a subpoena unless the parties confer or make a reasonable effort to confer.  A "reasonable effort to confer" means more

2018 detailing their efforts to confer through emails, letters and a telephone call, but no resolution was forthcoming.[24]  At the conclusion of the May 8 hearing, the Court directed Plaintiffs and DCF to again confer after having the benefit of hearing each other's oral arguments.  On May 22, 2018, DCF filed a Certificate of Compliance describing the discussions it had with Plaintiff's counsel to resolve their disputes, including its intention to produce some documents responsive to Plaintiffs' subpoena.[25]  After review of these Certificates, the Court is satisfied Plaintiffs and DCF conferred within the spirit of the Local Rule.

### b.    Issues Remaining after Plaintiffs and DCF Conferred

As referenced above, in the May 22, 2018 Certificate of Compliance, DCF agreed to produce all responsive documents requested except for the files for minors L.W., T.B.-W., C.N. and K.L. because DCF could not confirm these children were ever in the Wilkins' Home.[26]  Further, while DCF objects to categories 4 and 6 of the subpoena on the bases of irrelevancy and overbreadth,[27] DCF states it has no responsive documents to produce because it does not possess any KDHE documents prior to 2015[28] and does not have a list of the children at issue regarding the 2005 to 2012 KDHE actions against TFI.[29]

---

than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.

[24] *See* ECF No. 76 and Exhibit A attached thereto.

[25] ECF Nos. 81-84.

[26] ECF No. 81, ¶¶ 5, 7.  But DCF is agreeing to produce its files for the minor Plaintiffs and for J.F.  *Id.*

[27] ECF No. 81, ¶¶ 5-7.

[28] In 2015, DCF took over KDHE's responsibilities regarding supervision of private child placing services.  (*See* ECF No. 42, p. 3).

[29] ECF No. 81, ¶¶ 5-7.

However, regarding the documents it does produce, DCF requests that (1) all confidential agency records be submitted to the Court for an in-camera review pursuant to K.S.A. § 38-2212(e) before production; (2) the current Protective Order be modified to include DCF and the documents it produces; and (3) DCF be allowed to redact all sibling information, reporter information, social security numbers, attorney-client communications, patient-physician communications and any nonpublic portions of Kansas Standard Offense reports.[30]

Therefore, regarding the Amended Motion to Quash Subpoena, the remaining issues before the Court are: (1) whether DCF should be required to produce files for L.W., T.B.-W., C.N., K.L., and the children who were the subject of any civil action filed by KDHE against TFI between 2005 and 2012; (2) whether confidential agency records must be submitted to the Court for an in-camera review pursuant to K.S.A. § 38-2212(e) before production; (3) whether the current Protective Order should be modified to include DCF; and (4) whether DCF may redact certain information before production.

### 2.    Plaintiffs' Motion to Compel

Plaintiffs' Motion to Compel stems from their First and Second Requests for Production of Documents, served November 3, 2017 and November 9, 2017, respectively.[31]   During the May 8, 2018 hearing, the parties informed the Court they resolved their issues as to the production of the minor Plaintiffs' files, production of TFI employee files, and production of the documents in the Wilkins' Home file dated through

---

[30] *Id.*
[31] ECF Nos. 31, 32, 60-1, and 60-2.

October 13, 2009.[32]  Additionally, in its responsive brief, TFI agreed to produce documents in the Wilkins' Home file dated after October 13, 2009 to the extent the documents do not reference foster children other than Plaintiffs.[33]  This, then, leaves three document requests for the Court's resolution.

First, similar to their subpoena requests to DCF, are Plaintiffs' requests for documents and ESI relating to J.F., L.W., C.N., K.L., T.B.-W., and children who were the subject of any civil action filed by KDHE against TFI between 2005 and 2012.[34]  Second, is the request for documents and ESI in the Wilkins' Home file dated after October 13, 2009 in their entirety.[35]  Third, is Plaintiffs' request for the "file belonging to the 'client' namely, TFI, relating to legal representation of TFI by Foulston Seifken, LLP, in all administrative disciplinary proceedings involving TFI and Kansas Department for Health and Environment from 2009 to the present, including but not limited to the client file containing ESI and documents retained by Foulston Seifken, LLP, under the control of its client, TFI."[36]

TFI argues the requests are overbroad and seek irrelevant information because they deal with children who either resided in the Wilkins' Home after Plaintiffs left or who never resided there at all.  Plaintiffs contend the information is highly relevant and the requests are narrowly tailored.  Additionally, even though previously agreed to in the

---

[32] October 13, 2009 is the latest date either of the Plaintiffs resided in the Wilkins' Home.  *See* ECF No. 69, pp. 2-3.
[33] ECF No. 69, p. 14 n.5.
[34] ECF No. 60-1, Request No. 1 at pp. 4-5.
[35] *See id.*
[36] ECF No. 60-2, Request No.  2.c. at p. 5.

Protective Order, the parties now disagree about the necessity of an in-camera review by the Court of TFI documents per K.S.A. § 38-2212(e) before production.

## II.    Legal Standard

### A.    Motion to Quash

As relevant here, Fed. R. Civ. P. 45(d)(3)(A) requires the Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[37]  The issues relating to a motion to quash a subpoena are generally subject to the court's discretion.[38]

### B.    Relevance and Overbreadth for Motion to Quash and Motion to Compel

Under Rule 26(b)(1), a party may receive discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ."  Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on" any party's claim or defense.[39]  In other words, the court should permit a request for discovery unless "*it is clear* that the information sought can

---

[37] *Martinelli v. Petland, Inc*., Nos. 10–407–RDR, 09–529–PXH–DGC, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc*., 211 F.R.D. 658, 662 (D. Kan. 2003)).

[38] *Matson v. Hrabe*, No. 11-3192-RDR, 2014 WL 1745644, at *3 (D. Kan. May 1, 2014) (citing *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir.1990)).

[39] *In re EpiPen*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1586426, at *2 (D. Kan. Apr. 2, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

have *no possible* bearing" on a claim or defense.[40]  Information need not be admissible in evidence to be discoverable, but the scope of discovery must be proportional to the needs of the case.[41]  Relevancy determinations are generally made on a case-by-case basis.[42]

Unless a discovery request is overly broad on its face, the party resisting discovery has the burden to support its overbreadth objection.  This includes any objection to the temporal scope of the request.[43]  An interrogatory is not necessarily overly broad simply because it is unlimited in time and scope.[44]

## III.    Analysis

The Court will first address issues common to both motions, and then analyze the remaining issues specific to each motion.

### A.    Issues Common to both Motions

There are two issues common to both motions.  The first is whether DCF and TFI must submit confidential agency records to the Court for an in-camera review per K.S.A. § 38-2212(e) before production.  The second issue is whether DCF and TFI must produce records of minors not subject to this litigation.

---

[40] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (emphasis in original)).

[41] Fed. R. Civ. P. 26(b)(1).

[42] *In re EpiPen*, 2018 WL 1586426, at *2.

[43] *Swackhammer v. Sprint Corp*. PCS, 225 F.R.D. 658, 661–62 (D. Kan. 2004).

[44] *Hilt v. SFC Inc*., 170 F.R.D. 182, 186 (D. Kan. 1997).

1. **Confidential Agency Records Submitted to the Court for an In-Camera Review Pursuant to K.S.A. § 38-2212(e)**

Pursuant to K.S.A. § 38-2209(a), in order to protect the privacy of children who are the subject of a child in need of care record or report, certain records shall be confidential and shall not be disclosed except in limited circumstances. Included in these records are "agency records," which would include all records and reports in the possession or control of DCF concerning children alleged or adjudicated to be in need of care.[45] Because TFI appears to be an agent of DCF, it would also be included as a holder of agency records.[46] A circumstance allowing disclosure of such records is found at K.S.A. § 38-2212(e), which states:

> Court order. Notwithstanding the provisions of this section, a court of competent jurisdiction, after in camera inspection, may order disclosure of confidential agency records pursuant to a determination that the disclosure is in the best interests of the child who is the subject of the reports or that the records are necessary for the proceedings of the court and otherwise admissible as evidence. The court shall specify the terms of disclosure and impose appropriate limitations.

Despite agreeing to abide by this statute in the Protective Order, Plaintiffs now contend it is unnecessary for the Court to review confidential agency records in-camera before production because: (1) the Protective Order will protect the confidentiality of the

---

[45] As relevant here, K.S.A. § 38-2209(a)(2) defines "agency records" as "all records and reports in the possession or control of the secretary or any agent of the secretary . . . concerning children alleged or adjudicated to be in need of care." The "secretary" means the secretary for children and families or the secretary's designee. K.S.A. § 38-2202(dd).

[46] TFI states it is an agent of DCF for purposes of K.S.A. §§ 38-2209 and 38-2212 because it contracts with DCF to deliver specified child social welfare services on behalf of the State. ECF No. 69, p. 10; *see also Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 446, 827 P.2d 24, 31 (1992) (defining agency as a contract, either express or implied, by which one of the parties confides to the other the management of some business to be transacted in the party's name, or on the party's account, and by which the other assumes to do the business and render an account).

records; (2) the Court in *Boone v. TFI Family Servs., Inc.*,[47] did not require an in-camera review; and (3) the Kansas statute is procedural, not substantive.  DCF and TFI, on the other hand, argue the statute must be complied with because: (1) it is patterned after the Child Abuse Prevention and Treatment Act, a federal law requiring states to enact protections governing records of child abuse and neglect;[48] (2) the current Protective Order requires it; and (3) of the civil and criminal penalties imposed for not following the statute.[49]

The Court agrees with DCF and TFI that K.S.A. § 38-2212(e) should be followed. Plaintiffs have already agreed to the follow this statute in the Protective Order, and they have not convinced the Court to deviate from this course of action.   While it is true the Protective Order protects the further disclosure and confidentiality of the records, it does not exempt DCF and TFI from being subject to the penalties for failure to comply with Kansas law.

Furthermore, it does not appear the court in *Boone* addressed the issue of whether an in-camera review under K.S.A. § 38-2212(e) was appropriate in that case.[50] Additionally, the minor child in the *Boone* case died after TFI placed him with his father. Pursuant to K.S.A. § 38-2212(f), when "child abuse or neglect results in a child fatality . . ., reports or records of a child alleged or adjudicated to be in need of care received by the

---

[47] No. 14-2548-JTM-KGG, 2016 WL 3156823 (D. Kan. June 6, 2016).
[48] *See* 42 U.S.C. § 5106a.
[49] K.S.A. § 38-2209(b) (describing the civil and criminal penalties associated with improper disclosure of confidential information).
[50] *See Boone*, 2016 WL 3156823 (K.S.A. § 38-2212(e) is not discussed).

secretary . . . shall become a public record . . . ."  Therefore, due to the public nature of the records, it is plausible K.S.A. § 38-2212(e) was not applicable to the situation.

Finally, Plaintiffs cite a Western District of Oklahoma case[51] for authority that the Kansas statute is procedural and need not be followed by this Court.  The Court does not find this case binding or persuasive because it involves an Oklahoma statute different from K.S.A. § 38-2212(e).  The Court also notes other courts in this District have followed the in-camera directive outlined in K.S.A. § 38-2212(e).[52]  Based on existing authority, this Court will do the same.  Accordingly, any document required to be produced by DCF or TFI meeting the definition of confidential agency records must be submitted to the Court for an in-camera review per K.S.A. § 38-2212(e) prior to production.

**2.    Production of Records for Minors not Subject to this Litigation**

As stated above, DCF agreed to provide files for Plaintiffs C.S. and G.S. and for non-party J.F., but not for non-parties L.W., T.B.-W., C.N. and K.L. because it has no records of these children being in the Wilkins' Home.[53]  DCF also objects to producing files for children who were the subject of any civil action filed by KDHE against TFI between 2005 and 2012 because of the irrelevant and overbroad nature of the request.[54]

---

[51] *Shelter Mut. Ins. Co. v. Swigart*, No. CIV-13-1019-C, 2014 WL 4678392 (W.D. Okla. Sept. 18, 2014).

[52] *See, e.g., Brooks v. Hinzman*, No. 13-2410-EFM, 2014 WL 1047948 (D. Kan. Mar. 17, 2014); *Adkins v. TFI Family Servs., Inc*., No. 2:13-CV-02579-DDC, 2015 WL 4744461 (D. Kan. Aug. 11, 2015).

[53] *See* ECF No. 81, ¶¶ 5-7.

[54] *Id.*

Similarly, TFI objects to production of these other minors' records[55] for relevancy and overbreadth reasons.  Not only are the requests overbroad, TFI argues, but they are irrelevant because they seek records of children who either resided in the Wilkins' Home after Plaintiffs left or never resided there at all.  The Court will first address the relevancy argument and then analyze whether the requests are overly broad.

### a.    Relevancy

Contrary to the position taken by DCF and TFI, these exact relevancy issues have previously been decided in favor of production in *P.S. ex rel. Nelson v. The Farm, Inc*.[56] and *Boone v. TFI Family Servs., Inc*.[57]

*Nelson*, like the present litigation, involves claims of negligent placement of foster children by TFI.  In that case, TFI placed the minor plaintiffs in a foster home where they claimed abuse by the foster parents' teenage son.[58]  The plaintiffs, similar to the Plaintiffs here, claimed TFI had actual knowledge of the abuse, but failed to protect them.[59]

At issue in *Nelson* were the plaintiffs' request for records of four foster children placed in the foster home at issue ***after*** the plaintiffs were removed.[60]  Like here, defendant argued the records were irrelevant because the children resided in the foster home after plaintiffs left.[61]  The Court, relying on the well-established rule that relevancy is "broadly

---

[55] But, unlike DCF, TFI has not agreed to produce J.F.'s file.
[56] No. 07-2210-JWL-DJW, 2007 WL 4570872 (D. Kan. Dec. 27, 2007).
[57] No. 14-2548-JTM-KGG, 2016 WL 3156823 (D. Kan. June 6, 2016).
[58] *Nelson*, 2007 WL 4570872, at *1.
[59] *Id*.
[60] *Id*.
[61] *Id*.

construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party,"[62] found the records relevant to plaintiffs' claim that TFI knew or should have known abuse was occurring at the foster home.[63]

The *Boone* case also involves a claim of negligent placement by TFI.  The minor child at issue in *Boone* was placed in the custody of DCF, who then referred him to TFI for placement.[64]  TFI placed the child with his natural father.[65]  Shortly after this placement, he died from a brain injury at the hands of his father and/or his father's girlfriend.[66]  Similar to the present case, the heart of the *Boone* plaintiffs' claims was "TFI's reckless and highly inappropriate decision to place M.B. with his father."[67]

The discovery dispute in *Boone* centered around plaintiffs' request for DCF information relating to KDHE administrative actions against TFI, and the four foster children who were the subject of those actions.[68]  DCF objected to the release of this information on relevancy grounds.[69]  Although not explicitly stated in the opinion, these four foster children were placed in different homes than the minor in *Boone*.[70]  The *Boone* court found the information relevant and ordered it produced, stating it "could be germane

---

[62] *Id*. at *2 (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D.Kan.2001)).

[63] *Id*. at *2.

[64] *Boone*, 2016 WL 3156823, at *1.

[65] *Id*.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id*.

[70] Plaintiffs' counsel represented in briefing and at oral argument that the non-party foster children records sought in this case are the same children whose records were sought in *Boone*. (*See* ECF No. 42, p. 9 n.4).

to Plaintiffs' theory of pattern or habit, the negligence claim, or the issue [of] recklessness in support of a punitive damages claim."[71]

Similarly, Plaintiffs here argue these other minors' records are highly relevant to their claims of negligent placement and abuse, TFI's alleged custom and habit of making inappropriate placements and failing to heed signs of abuse, and recklessness in support of punitive damages. Based on the *Nelson* and *Boone* cases and the rule that relevancy is broadly construed, the Court agrees the records are relevant and will order them produced as outlined in Section III.A.2.b. below.

Before moving on, however, the Court will address an argument made by DCF in its briefing and at oral argument. DCF asserts that, pursuant to K.S.A. § 38-2212(e), production of the records would be against the best interests of these children because they are not the subjects of this litigation. However, K.S.A. § 38-2212(e) states after in camera inspection, a court "may order disclosure of confidential agency records pursuant to a determination that the disclosure is in the best interests of the child who is the subject of the reports *or* that the records are necessary for the proceedings of the court and otherwise admissible as evidence."[72] For the reasons stated above, the Court finds these records not only relevant, but necessary for these proceedings. But, as stated in Section III.A.1. above,

---

[71] *Boone*, 2016 WL 3156823, at *1.

[72] Emphasis added; *see also Brooks*, 2014 WL 1047948, at *1 (regarding documents submitted to it per K.S.A. § 38-2212(e), the Court stated it must determine whether "the documents are necessary for the proceedings of the court and otherwise admissible as evidence" and "specify the terms of disclosure and impose appropriate limitations").

these records shall be submitted to the Court before production for compliance with K.S.A. § 38-2212(e).[73]

Additionally, the Court finds the cases[74] relied on by DCF to support its argument that K.S.A. § 38-2212(e) bars release of these records unpersuasive.  In those cases, while the documents were submitted to the courts for an in-camera review per K.S.A. § 38-2212(e), neither case presents a specific request to produce other minors' records, like there is here.[75]

### b.    Overbreadth

TFI objects to Plaintiffs request for all "documents and ESI" relating to these other minors' records as overly broad based on how Plaintiffs define "documents" and "ESI" in their discovery requests.   TFI contends when read literally, this would "encompass everything conceivably related to" these minors.[76]  TFI additionally argues some of these children have been in foster care for many years, making their files voluminous.  TFI and DCF both object to the breadth of the request for records of children who were the subject of *any* civil action filed by KDHE against TFI between 2005 and 2012, claiming this would include many actions and documents.

---

[73] *See id.*

[74] DCF relies on *Brooks*, 2014 WL 1047948 and *Adkins*, 2015 WL 4744461.

[75] *See P.S. ex rel. Nelson v. Farm, Inc*., No. CIV A 07-CV-2210-JWL, 2009 WL 939123, at *9 (D. Kan. Apr. 6, 2009) (explaining the difference between disclosing other minors' records when shown to be relevant as opposed to the court merely conducting an in-camera review under K.S.A. § 38-2212(e)).

[76] ECF No. 69, p. 6 and n.2.

Pertaining to the KDHE actions against TFI, Plaintiffs stated at the hearing they are only interested in the actions involving inappropriate placements. The Court finds this limitation appropriate given Plaintiffs' claim of TFI having a pattern and habit of making inappropriate placements. Therefore, production of records of children who were the subject of actions filed by KDHE against TFI between 2005 and 2012 will be limited to only those actions involving inappropriate placements.

Regarding the actual files to be produced, Plaintiffs argue they need to know about the children from the beginning and therefore request the entire files. The Court, however, views Plaintiffs' request for the entire file as overbroad in temporal scope and does not believe Plaintiffs need access to the entire file to gain information on specific instances of alleged inappropriate placement and abuse.[77]

The Court therefore limits production as follows: (1) for L.W., T.B.-W., C.N., K.L., and J.F., the Court will limit production of their files from the year before to the year after the incidents described by Plaintiffs in their briefing[78] and (2) for the minors subject to the KDHE actions against TFI, the Court will limit production of their files from the year before to the year after the placements at issue. This will not preclude Plaintiffs from requesting additional documents if, after reviewing the records produced, Plaintiffs feel

---

[77] *See, e.g., Stewart v. Mitchell Transp.*, No. 0CIV.A. 01-2546-JWL, 2002 WL 1558210, at *7 (D. Kan. July 11, 2002) (finding document request regarding all collisions or incidents that trucks operated by defendant were involved in from date of accident at issue through the present overbroad in time and limiting the request to the one-year time frame following the accident).

[78] For L.W., see pp. 4-6,10; for T.B.-W., see pp. 4, 11; for C.N., see pp. 5, 10-11; for K.L., see p. 5; for J.F., see pp. 5, 10, of Plaintiff's Memorandum in Support of Motion to Compel (ECF No. 60).

additional information would be relevant to their claims.  Additionally, because DCF has

agreed to produce J.F.'s file in its entirety,[79] the Court will so ORDER, but DCF shall

produce the other minors' files per the above limitations.

Finally, DCF argues because T.B.-W. was adopted, her records are sealed and

cannot be disclosed without a court order.[80]  To the extent a court order is required under

the Kansas statutes for production of T.B.-W.'s records as described above, the Court so

ORDERS.

### B.    Issues Specific to the Amended Motion to Quash Subpoena (ECF No. 39)

The remaining issues specific to the Amended Motion to Quash Subpoena are (1)

whether the Protective Order should be modified to include DCF and (2) whether DCF

should redact sibling information, reporter information, social security numbers, attorney-

client communications, patient-physician communications and any nonpublic portions of

Kansas Standard Offense reports before production.  Each issue will be addressed in turn.

### 1.    Modification of the Protective Order

In its briefing and at the May 8, 2018 hearing, DCF requested modification of the

Protective Order before production of documents.  Although no specific suggestions, other

than having the Protective Order specifically include DCF, were made at the hearing,

neither Plaintiffs or TFI objected to modification.  The Court agrees it is appropriate to

modify the Protective Order to specifically include DCF and the documents it produces,

---

[79] ECF No. 81, ¶¶ 5, 7.
[80] *See* K.S.A. §§ 59-2122(a) and 59-2135.

but particularly to include DCF under the provisions of paragraph 19 regarding production of documents per K.S.A. § 38-2212(e).

Regarding DCF's concerns about documents not being used outside of this litigation and return of documents at its conclusion,[81] those issues are currently addressed in paragraphs 6 and 10 of the Protective Order. Therefore, these items should no longer be of concern after DCF is added to the Protective Order.

Although not addressed by the parties, it is also pertinent that the definition of confidential information in paragraph 2 of the Protective Order be expanded to include the documents/information DCF is producing, specifically to include the non-privileged information DCF identifies for redaction above. Not knowing the exact substance of the information DCF will produce, the Court leaves it to the parties and DCF to confer about this and any other modifications they feel are necessary. In the Conclusion Section of this Opinion, the Court will order the parties and DCF to confer and submit a revised Protective Order to the Court for approval.

### 2. Redaction of Certain Information Before Production

DCF requests redaction of sibling information, reporter information, social security numbers, and non-public portions of any Kansas Standard Offense reports on the basis of confidentiality, but such information cannot be shielded from discovery based on this quality alone. Protecting confidential information does not equate to a privilege.[82] And, in this case, the Protective Order, especially after it is modified, should alleviate DCF's

---

[81] *See* ECF No. 81, ¶ 5.
[82] *Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004).

concerns about disclosure of confidential information.[83]  However, because DCF will be added to paragraph 19 of the Protective Order, it can, per the provisions outlined therein, alert the Court to any information it feels needs extra protection, such as redaction or an attorney's eyes only designation, and the Court will consider the request at that time.

DCF also seeks to redact privileged information, such as attorney-client or patient-physician communications.  Because DCF fails to provide any specific details about these communications, the Court declines to adopt DCF's request at this time.[84]  If DCF is submitting information it believes is privileged to the Court for an in-camera review before production, it shall provide the Court with the unredacted documents and a privilege log, and the Court will, if necessary, order redaction or address any issues implicated in the privilege log.[85]  If, however, DCF is producing information directly to Plaintiffs, it should redact any information it feels is privileged and provide a privilege log.[86]

### C.    Issues Specific to the Motion to Compel (ECF No. 59)

The remaining issues specific to the Motion to Compel are (1) whether TFI should produce the Wilkins' Home file post-2009 in its entirety and (2) whether TFI's client file should be produced.  Each issue is discussed below.

---

[83] *See, e.g., Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, No. 14-1011-RDR, 2014 WL 6472885, at *3 (D. Kan. Nov. 18, 2014) ("Any concerns about confidentiality can be addressed by making the information subject to a protective order limiting the parties' use and disclosure of this information.").

[84] *See Taylor v. Hy-Vee, Inc.*, No. 15-9718-JTM, 2016 WL 7405669, at *1 (D. Kan. Dec. 22, 2016) (stating the party asserting the privilege bears the burden of demonstrating it applies).

[85] *See* Protective Order, ¶ 19 (ECF No. 26); *see also Schmitz v. Davis*, No. 10-4011-RDR-KGS, 2011 WL 1627010, at *7-8 (D. Kan. Apr. 28, 2011) (describing information to be included in a privilege log).

[86] *See* Fed. R. Civ. P. 45(e)(2)(A); *Schmitz*, 2011 WL 1627010, at *7-8.

### 1.    Production the Wilkins' Home File Post-2009 in its Entirety

In its response to Plaintiffs' Motion to Compel, TFI agreed to produce documents in the Wilkins' Home file dated after October 13, 2009 to the extent the documents do not reference foster children other than Plaintiffs.[87]  For the reasons stated in Section III.A.2.a. above, the Court finds information regarding children placed in the Wilkin's Home after Plaintiffs left to be relevant to Plaintiffs' claims.  Therefore, TFI shall produce documents in the Wilkins' Home file dated after October 13, 2009 in their entirety, subject to the Court first reviewing any confidential agency documents in-camera as necessary.

### 2.    Production of TFI's Client File

Plaintiffs have asked for the "file belonging to the 'client' namely, TFI, relating to legal representation of TFI by Foulston Seifken, LLP, in all administrative disciplinary proceedings involving TFI and Kansas Department for Health and Environment from 2009 to the present, including but not limited to the client file containing ESI and documents retained by Foulston Seifken, LLP under the control of its client, TFI."[88]

TFI's primary objection to producing these records is the same as its relevancy argument in Section III.A.2.a. above.  Namely, that the information is irrelevant because it deals with children who were either never in the Wilkins' Home or who were there after Plaintiffs left.

But, Plaintiffs argue the information is relevant because Foulston Seifken represented TFI in the 2011 KDHE administrative action involving the Wilkins' Home.  In

---

[87] ECF No. 69, p. 14 n.5.
[88] ECF No. 60-2, Request No. 2.c. at p. 5.

particular, Plaintiffs argue that as part of these 2011 proceedings, KDHE records show TFI's attorneys denying inappropriately placing foster children in the Wilkins' Home, and as part of their defense, TFI (through its attorneys) presented KDHE with numerous documents attempting to demonstrate the adequacy of TFI's policy and procedure concerning the safety of foster children, including those placed in the Wilkin's Home.

The Court agrees with Plaintiffs that this information is relevant to their claims and should be produced. Additionally, for the reasons stated in Section III.A.2.a. above, the Court rejects TFI's relevancy arguments. However, the Court finds the temporal scope of the request, from 2009 to the present, overbroad. Plaintiffs informed the Court the 2011 administrative action ended in 2012. Therefore, the Court will limit production of the above documents from 2009 to 2013, which will encompass the year after the 2011 action concluded.[89] This will not preclude Plaintiffs from requesting additional information if, after reviewing the records produced, they feel additional documents would be relevant to their claims. When producing such documents, TFI should submit a privilege log for any documents it believes to be privileged.

## IV.    Conclusion

For the reasons stated above, **IT IS THEREFORE ORDERED** that DCF's Amended Motion to Quash Subpoena is **GRANTED IN PART AND DENIED IN PART**

---

[89] *See, e.g., Swackhammer*, 225 F.R.D. at 661-62 (finding plaintiff's request for information regarding similar incidents occurring three years before and two years after the alleged discriminatory termination not overly broad in temporal scope).

and Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.
The Court's above orders are summarized below for each motion.

Regarding **DCF's Amended Motion to Quash Subpoena**, the Court **ORDERS** as
follows:

1.      No later than **June 29, 2018**, the parties and DCF shall confer and submit a
revised Protective Order pursuant to Section III.B.1. above.   Except as outlined in Section
III.B.2. above, DCF shall not redact confidential information before production.

2.      DCF shall produce the responsive documents it agreed to produce as stated
in the May 22, 2018 Certificate of Compliance.

3.      DCF shall produce files for L.W., T.B.-W., C.N., K.L., and the children who
were the subject of actions filed by KDHE against TFI between 2005 and 2012 pursuant to
the limitations outlined in Section III.A.2.b. above.

4.      Any documents produced by DCF meeting the definition of confidential
agency records shall be submitted to the Court for an in-camera review pursuant to K.S.A.
§ 38-2212(e) prior to production.

5.      No later than **July 31, 2018**, DCF shall produce the above documents directly
to Plaintiffs or submit them to the Court for an in-camera review, as appropriate.

Regarding **Plaintiffs' Motion to Compel**, the Court **ORDERS** as follows:

1.       Any documents produced by TFI during this litigation meeting the definition
of confidential agency records shall be submitted to the Court for an in-camera review
pursuant to K.S.A. § 38-2212(e) prior to production.

2.      TFI shall produce documents regarding the minor Plaintiffs' files, the TFI employee files, and documents in the Wilkins' Home file dated through October 13, 2009 as agreed upon by the parties.

3.       TFI shall produce documents and ESI relating to J.F., L.W., T.B.-W., C.N. and K.L., and the children who were the subject of actions filed by KDHE against TFI between 2005 and 2012 pursuant to the limitations outlined in Section III.A.2.b. above.

4.      TFI shall produce documents in the Wilkins' Home file dated after October 13, 2009 in their entirety.

5.      TFI shall produce its "client file" pursuant to the limitations outlined in Section III.C.2.

6.      No later than **July 31, 2018**, TFI shall produce the above documents directly to Plaintiffs or submit them to the Court for an in-camera review, as appropriate.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 8th day of June, 2018.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge