**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| M. SMITH, Parent and Natural | ) | |
| Guardian of minor, C.S., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 17-02235-JWB-GEB |
| TFI FAMILY SERVICES, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Second Motion to Compel (ECF No. 91). After careful consideration of Plaintiff's Motion and Memorandum in Support (ECF No. 92), Defendant's Response to Motion to Compel (ECF No. 95), Plaintiff's Reply (ECF No. 100), and all exhibits, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Second Motion to Compel.

## I.     Background

Plaintiff brings this action on behalf of C.S., a minor child, against Defendant TFI Family Services, Inc. Defendant is a private company that formerly contracted with the Kansas State Department of Children and Families (DCF) to provide placement services for foster children in State custody.[1] In 2008, C.S. was placed in DCF custody and referred to Defendant for placement services.[2] Defendant placed C.S. in the home of Delores and

_____

[1] Answer, ¶ 2 (ECF No. 41).
[2] Complaint, ¶¶ 45-46 (ECF No. 1).

1

Earl Wilkins (Wilkins' Home) from October 2008 through mid-2009.[3]  Plaintiff alleges

C.S. suffered physical and emotional abuse while residing in the Wilkins' Home.[4]

Based on hotline calls, reports from other foster children and reports from C.S.,

Plaintiff claims Defendant knew, or should have known, abuse was occurring at the

Wilkins' Home, but recklessly choose to place C.S. there anyway.[5]  Plaintiff further alleges

Defendant has a conscious disregard for the safety of children placed in its care, as reflected

by a custom and practice of making inappropriate placements in foster homes and of

disbelieving reports of abuse by foster children.[6]  Thus, Plaintiff claims Defendant is liable

for failing to keep C.S. safe from the alleged abuse, and asserts damages under 42 U.S.C.

§ 1983 and state tort law.[7]  Defendant denies these allegations.[8]

Information regarding the procedural posture of this case can be found in the Court's

June 8, 2018 Memorandum and Order regarding previously filed motions to quash and to

compel,[9] and need not be repeated here.  But, it is important to note this case was

consolidated for discovery purposes with a similar case filed on behalf of G.S., another

foster child residing in the Wilkins' Home.[10]  G.S.'s case was resolved during a joint

---

[3] C.S.'s Complaint states she resided in the Wilkins' Home until May of 2009.  (ECF No. 1, ¶ 51.)
Defendant, however, states C.S. resided there until October of 2009.  (ECF No. 69, pp. 2-3.)
[4] Complaint, ¶ 51 (ECF No. 1).
[5] *Id*. at ¶¶ 68-121.
[6] *Id*. at ¶¶ 56-67.
[7] *Id.* at ¶¶ 68-124.
[8] *See generally* Answer (ECF No. 41).
[9] ECF No. 89.
[10] *Shadden, et al v. TFI Family Services, Inc*., 17-cv-02236-JWB-GEB at ECF No. 12.

mediation held in August of 2018.[11]  Efforts at resolving C.S.'s case, however, were not as

successful, and discovery remains on-going.[12]

## II.     Plaintiff's Second Motion to Compel (ECF No. 91)

### A.     Duty to Confer

Plaintiff's Second Motion to Compel (hereinafter referred to as Motion) seeks an

order compelling Defendant "to respond fully and in good faith" to 15 of the 17

interrogatories propounded in Plaintiff's First Set of Interrogatories.[13]  As a threshold

matter, the Court first considers whether the parties have sufficiently conferred regarding

Plaintiff's Motion, as is required by D. Kan. Rule 37.2.[14]  A review of the briefings and

attached exhibits indicates counsel conferred via email and telephone in an effort to resolve

Plaintiff's issues with Defendant's interrogatory answers.[15]  As such, the Court is satisfied

counsel have adequately conferred as required by the above-cited rule.

### B.     Legal Standard

Under Fed. R. Civ. P. 37, a party may motion the court for an order compelling

answers to its interrogatories if it believes the answers given are incomplete or evasive.[16]

Such is the reason for the present Motion.  Plaintiff contends Defendant's answers to the

---

[11] *Id.* at ECF No. 27.

[12] *See* ECF No. 105 and Order Revising Scheduling Order (ECF No. 108).

[13] ECF No. 92, p. 9.

[14] This Local Rule provides the court will not entertain any motion to compel unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.  D. Kan. Rule 37.2

[15] *See* ECF No. 92 at p. 3; ECF No. 92-3; ECF No. 92-4.

[16] Fed. R. Civ. P. 37(a)(1), (3), and (4).

15 interrogatories in dispute are incomplete and evasive, and requests an order compelling Defendant to fully answer the same.[17] The Court has broad discretion in deciding whether to grant or deny a motion compel.[18]

Two issues germane to Plaintiff's Motion are Plaintiff's use of contention interrogatories and Defendant's answering certain interrogatories by referencing business records. Both practices are permitted under Rule 33, which governs interrogatories, and are summarized below.

Contention interrogatories are expressly permitted by Rule 33(a), which states an interrogatory "is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ."[19] Contention interrogatories are designed to "narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position."[20]

Rule 33(d) also expressly allows a party to answer an interrogatory by referencing business records already produced if "the burden of deriving or ascertaining the answer will be substantially the same for either party" and the records are specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[21] The purpose of this rule is to relieve a party from "having to

---

[17] The briefing reveals the parties resolved the dispute regarding Interrogatory No. 7. (ECF No. 95, p. 8.)

[18] *Comeau v. Rupp*, 142 F.R.D. 683, 684-85 (D. Kan. 1992) (stating "a magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes").

[19] Fed. R. Civ. P. 33(a)(2).

[20] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007) (quoting *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000)).

[21] Fed. R. Civ. P. 33(d).

engage in burdensome or expensive research into [its] own business records in order to give an answer" where the burden of ascertaining the information would be same on the interrogating party.[22]

To comply with Rule 33(d), "the respondent must thus specifically designate what business records answer each interrogatory; such records must contain the information sought by the interrogatory; and the burden of deriving the answer from them must be substantially the same for the party seeking the information as for the respondent."[23]  In other words, a party does not comply with Rule 33(d) by merely referring another party to a large mass of records hoping the party will be able to glean the requested information from them.[24]  This meets neither the specificity nor equal burden requirements,[25] and the Court generally finds such practice unacceptable.[26]

With these standards in mind, the Court proceeds to analyze the interrogatory disputes.

---

[22] Fed. R. Civ. P. 33 advisory committee's note to the 1970 amendment, subdivision (c).

[23] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996).

[24] *Bettis v. Hall*, No. 10-2457-JAR, 2015 WL 1268014, at *6 (D. Kan. Mar. 19, 2015) (citing *Johnson v. Kraft Foods N.A., Inc.*, 236 F.R.D. 535, 545 (D. Kan. 2006) (quoting *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680–81 (D. Kan. 2004)); *see also* Fed. R. Civ. P. 33 advisory committee's note to the 1970 amendment (subdivision (c)) and 1980 amendment.

[25] *See Unified Sch. Dist. 467 v. Gray Architects, LLC*, No. 14-1025-KHV, 2016 WL 2727281, at *1 (D. Kan. May 6, 2016) (stating a party cannot comply with Rule 33(d) by "generally identifying large categories of records"); *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc*., No. CIV.A. 10-2558-KHV-D, 2012 WL 3292850, at *14 (D. Kan. Aug. 13, 2012) ("'The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them.'  Rather, a party opting to produce business records under Rule 33(d) 'must indicate with specificity where the information can be found.'") (internal citations omitted); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. CIV. A. 94-2304-EEO, 1996 WL 397567, at *3 (D. Kan. July 11, 1996).

[26] *Bettis*, 2015 WL 1268014, at *6.

## C. Interrogatory Disputes

Each disputed interrogatory is discussed below. The text of each interrogatory and answer quoted in the following sections is taken from a copy of the same attached as Exhibit 2 to Plaintiff's Motion.[27] However, for the sake of clarity and brevity, all references to G.S. have been removed because, as stated above, G.S.'s case has been resolved and is no longer at issue.

### 1. Interrogatory No. 1a and 1b

Interrogatory No. 1a and 1b asks Defendant to:

1a. Identify each person by initial, and year of birth who made a complaint to you based on his or her experience as a foster child in the Wilkins' home.

1b. Identify each person who made a complaint to you concerning or on behalf of a foster child placed by TFI in the Wilkins' home from 1999, through 2011.

Defendant answered as follows:

Objection. This interrogatory is vague and ambiguous as to the term "complaint." The term "complaint" has different meanings. For example, a foster child may have made a complaint about dinner or about rules regarding bedtime. This interrogatory is also facially overbroad as it is not limited in temporal scope. *See Hammond v. Lowe's Home Centers, Inc*., 216 F.R.D. 666, 675 (D. Kan. 2003). Further, "complaints" made after 10/13/2009, which do not involve plaintiffs, are not relevant to any party's claims or defenses. Plaintiffs contend they were abused by the Wilkinses or witnessed abuse while residing in the Wilkins' home and that defendant knew, or should have known, they were being abused or witnessing abuse. C.S. left the Wilkins' home 10/13/2009. Therefore, interrogatories not related to the plaintiffs after 10/13/2009 are not relevant to any party's claims or defenses.

Two issues regarding this interrogatory can be quickly disposed of. Regarding relevancy, the Court previously ruled that incidents regarding foster children occurring

---

[27] ECF No. 92-2.

after Plaintiff resided in the Wilkins' Home are relevant.[28]  As to temporal scope, the Court

agrees the requests are overbroad.  C.S. resided in the Wilkins' Home from October of

2008 to October of 2009.  The Court finds complaints made in the three years preceding

through the two years subsequent to Plaintiff's residency to be a proper inquiry.[29]

Therefore, the Court limits this interrogatory to the time period of 2005 to 2011.

The main dispute here concerns the meaning of the term "complaint."  In her

briefings related to the Motion, Plaintiff makes clear she is looking for complaints

regarding serious incidents, in other words complaints requiring a response/action from

Defendant.[30]  Although not part of the above interrogatory answer, Defendant states it

provided that information during the conferral process by pointing Plaintiff to critical

incident reports produced in response to Plaintiffs' first request for production of

documents.[31]

Plaintiff has two issues with Defendant's reference to "critical incident reports."

First, citing Fed. R. Civ. P. 33(d), Plaintiff argues Defendant must be more specific

regarding the location of such information when over 12,000 pages of documents have

been produced in this case.  As stated above, responding parties cannot, under the guise of

Rule 33(d), generally refer to a mass of records.[32]  Responding parties must specifically

---

[28] June 8, 2018 Memorandum and Order, pp. 13-15 (ECF No. 89).
[29] *See, e.g., Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661-62 (D. Kan. 2004) (finding plaintiff's request for information regarding similar incidents occurring three years before and two years after the alleged discriminatory termination not overly broad in temporal scope).
[30] *See* ECF No. 92-3, p. 1; ECF No. 100, pp. 7-9.
[31] ECF No. 95, p. 3.
[32] *See supra* notes 24-25 and accompanying text.

identify in their interrogatory answers which documents contain the responsive information.[33]   Otherwise, the interrogatories must be answered without referring to records.[34]

The Court finds Defendant's general reference to "critical incident reports" does not meet Rule 33(d)'s specificity requirement.  Defendant has not provided Plaintiff with bates numbers to locate the critical incident reports, let alone identify where the responsive information can be found within those reports.[35]  Having reviewed documents in-camera, the Court is fully aware of the voluminous records in this case.[36]

Second, Plaintiff argues "critical incident reports" are different than "complaints" in terms of response by Defendant.  Critical incident reports require a higher level of response from Defendant and must be reported to the State for investigation.  Complaints, on the other hand, are only reviewed internally by Defendant.  Thus, per Plaintiff, the interrogatory covers incidents of harm occurring in the Wilkins' Home that may not have been reported to the State.

Based on the above, the Court therefore construes the word "complaint" to encompass serious incidents requiring an internal response/action from Defendant, but which fell short of being reported to the State.

---

[33] *Pulsecard, Inc.*, 168 F.R.D. at 305.

[34] *Id.*

[35] *Unified Sch. Dist. 467*, 2016 WL 2727281, at *2 (stating that general references to voluminous documents without specifying a bates number or page number where the information can be found is not sufficient detail to enable the interrogating party to locate and identify responsive information); *Bettis*, 2015 WL 1268014, at *5-6 (referencing thousands of pages of documents without specifying the responsive documents' identities and location does not comply with Rule 33(d)).

[36] *See* ECF Nos. 49, 80, 103, and 110.

For the above reasons, Plaintiff's Motion regarding Interrogatory 1a and 1b is **GRANTED IN PART AND DENIED IN PART**.  Within 30 days from the date of this Order, Defendant shall provide Plaintiff with a list identifying persons who made serious complaints about treatment of foster children occurring in the Wilkins' Home from 2005 to 2011.  Serious complaints encompass complaints which required an internal response or action from Defendant, but fell short of being reported to the State.  If Defendant chooses to answer by referencing business records per Rule 33(d), Defendant must identify specifically which documents contain the answer to the interrogatory.  Those documents should be identified by specific bates numbers.[37]  That is, Defendant shall not answer by referencing a range of hundreds (or thousands) of pages of documents.[38]  If Defendant cannot comply with this and the other requirements of Rule 33(d), it must completely answer the interrogatory without referencing business records.

### 2.  Interrogatory No. 2

Interrogatory No. 2 states:

> Identify all facts which you considered as material in making your decision to place C.S. in the Wilkins' Home.

Defendant answered:

> The level of care needed based on all available information about the child; proximity of placement in relation to biological family and Resource Foster Parents' ability to meet visitation needs of child; religious/spiritual beliefs and needs; any cultural/value needs of the child; behavioral/emotional needs of the child (i.e. Mental Health Services); medical needs of the child (KBH,

---

[37] *Johnson,* 236 F.R.D. at 545 ("The easiest way for Plaintiff to comply with identification requirement is for Plaintiff to identify by bates number which documents are responsive to each of the referenced interrogatories.").

[38] *See* cases cited *supra* note 35.

immunizations); educational needs of the child; and supervision needs (respite and day care).

See C.S. Paper File (To be reviewed per K.S.A 38-2212): 6648-6649, 6662, 6734-6738, 6743, 6756-6761, 6766-6767, 6773-6799, 6855-6856, 7001-7003, 7006

Program Procedure Manuals: 7120-7121, 7156-7157, 7208-7210, 7243-7245, 10033-1034, 10067-10068, 10121-10123, 10156-10158.

Plaintiff has two complaints with Defendant's answer. First, Plaintiff asserts Defendant did not supply any actual facts as requested by the interrogatory. Second, Plaintiff, as above, argues Defendant has improperly invoked Rule 33(d) and the burden is not the same on Plaintiff as on Defendant in ascertaining the answer to the interrogatory from the cited records. Plaintiff insists an unequal burden would be imposed if she is expected to examine the numerous documents cited and then speculate as to what factual information contained in the documents constituted the reason for C.S.'s placement in the Wilkins' Home.

The Court agrees. This is a contention interrogatory seeking the material facts Defendant considered when placing C.S. in the Wilkins' Home. And, "the option to produce business records would rarely constitute an appropriate response for contention interrogatories because contention interrogatories, by their very nature, seek information regarding a party's opinion or contention. It is difficult to see how business records would provide this information."[39] The Court finds it reasonable to expect Defendant to answer the seemingly straightforward question of why it placed C.S. in the Wilkins' Home.[40]

---

[39] *Unified Sch. Dist. 467*, 2016 WL 2727281, at *2.
[40] *See, e.g., Heartland Surgical Specialty Hosp., LLC*, 2007 WL 2192860, at *1 (stating the court would not require one party to fathom what another party may elect to contend as claims from the

Based on the above, Plaintiff's Motion regarding Interrogatory No. 2 is **GRANTED**. Within 30 days from the date of this Order, Defendant shall provide Plaintiff a factually sufficient response to the interrogatory.

### 3. <u>Interrogatory Nos. 3-4</u>

Interrogatory No. 3 asks:

> Identify those documents which describe your policies and practices relating to your placement of foster children in the Wilkins' Home from 2000 through 2011, or produce a copy of the documents.

Interrogatory No. 4 asks:

> Identify those documents which describe the policies and procedures you followed in managing the Wilkins' Home from 2000, through 2011, or produce a copy of the documents.

After objecting to the interrogatories as vague and ambiguous, Defendant responded as follows:

> Subject to the foregoing objection, policies and procedures from 2000 to 2009 are produced. See Bates Nos. 7068-11889.

Despite objecting on vague and ambiguous grounds, Defendant did not argue these objections in its Response to Plaintiff's Motion.[41] Therefore, the Court finds Defendant has not met its burden of supporting the objections, and they are overruled.[42]

But, Plaintiff's main issue with Defendant's response to these interrogatories is instead of answering the interrogatories, Defendant cited to approximately 4,800 pages of

---

documents that had been produced, even when the data was equally available to both parties) (citing *Hoffman v. EEOC*, 117 F.R.D. 436, 438 (D. Kan. 1987)).

[41] ECF No. 95, pp. 5-6.

[42] *See, e.g., Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc.*, No. 10-CV-2558-KHV-DJW, 2012 WL 3238082, at *4 (D. Kan. Aug. 7, 2012); *Heartland Surgical Specialty Hosp., LLC*, 2007 WL 2192860, at *1 (partying objecting to interrogatories has burden to support its objections).

business records covering nearly every procedure within its organization, many of which, according to Plaintiff, are clearly not applicable to this case. As with the above interrogatories, Plaintiff argues this is improper under Rule 33(d) as it places an unequal burden to ascertain which policies and procedures Defendant relied on in placing children in foster homes and in managing foster homes during the requested time period. Additionally, it would require Plaintiff to guess at which policies and procedures Defendant applied. Defendant responds it is within its right under Rule 33(d) to refer Plaintiff to the bates numbers containing the policies and procedures.

Because the interrogatories ask Defendant to identify documents describing various policies and procedures, the Court agrees it is appropriate under Rule 33(d) to answer by referencing business records. However, Rule 33(d) requires: (1) the burden of deriving or ascertaining the answer be substantially the same for either party; and (2) the records be specified in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.[43] The Court does not believe referencing 4,800 pages of documents meets these requirements.[44] In fact, doing so places a tremendous burden on Plaintiff to review each page of the cited documents in search of policies and procedures that may be responsive to the interrogatories. Defendant is in the best position to determine which policies and procedures it relied on when placing children in foster homes and in managing those foster homes, and can more easily identify that information than Plaintiff can.

---

[43] *See supra* notes 21 and 23 and accompanying text.
[44] *See* cases cited *supra* notes 24-25, 35.

But, the Court does not find Defendant's duty to sufficiently specify records under Rule 33(d) requires identification of paragraph numbers, as Plaintiff argues. It is sufficient for Defendant to reference the applicable policies and procedures by title/name and bates numbers where the responsive information can be found.[45]

Therefore, based on the above, Plaintiff's Motion regarding Interrogatory Numbers 3 and 4 is **GRANTED IN PART AND DENIED IN PART**. The Court will allow Defendant to answer the interrogatories by referencing business records, but Defendant must identify by name/title which policies and procedures it relied on when placing children in foster homes and in managing those foster homes and must refence the bates numbers containing those policies and procedures. Defendant shall do so within 30 days from the date of this Order.

### 4. Interrogatory No. 5

Interrogatory No. 5 states:

> Identify the person who made the final decision to place C.S. in the Wilkins' Home, and the supervisor of that person, and the supervisor's supervisor.

Defendant answered:

> This interrogatory incorrectly assumes the final decision to place C.S. in the Wilkins' home was made by one individual. A licensed social worker is required to review the placement agreement and sign off on the process matching the child with a resource home. Sherise Hall signed the placement agreement for C.S. Ms. Hall's supervisor was Vicki O'Brien, and the supervisor's supervisor was Rhonda Thompson.

---

[45] *See, e.g., Unified Sch. Dist. 467*, 2016 WL 2727281, at *2 (stating party should reference specific bates or page numbers when citing a voluminous exhibit); *Bettis*, 2015 WL 1268014, at *5-6 (where records referenced were 5,000 pages, responsive documents should be specified by identity and location); *Johnson*, 236 F.R.D. at 545 ("The easiest way for Plaintiff to comply with identification requirement is for Plaintiff to identify by bates number which documents are responsive to each of the referenced interrogatories.").

See Bates Nos. 267-157 (C.S. Placement Agreement); 11890-11891 (List of Foster Children in Wilkins' Home).

It is hard to decipher Plaintiff's issue with Defendant's answer. Plaintiff appears to argue Defendant did not correctly answer the interrogatory. According to Plaintiff, Defendant's policies state the persons who made the final decision to place C.S. in the Wilkins' Home should be employees from Defendant's "Intake" division, and that the employees identified above are not from this division. Plaintiff therefore asks this Court to compel Defendant to answer the interrogatory by providing names of employees from the "Intake" division and their supervisors.[46]

Defendant responds it has fully answered the interrogatory. And, the Court agrees Plaintiff cannot compel Defendant to change its answer because Plaintiff does not believe the answer is correct.[47] However, the first sentence of Defendant's answer does give the Court some pause. It reads "[t]his interrogatory incorrectly assumes the final decision to place C.S. in the Wilkins' home was made by one individual." But then Defendant goes on to identify only one individual and the supervisors related thereto. If employees other than the one listed above were involved in making the final decision to place C.S. in the Wilkins' Home, then Defendant should supplement the above answer accordingly, including providing the requested information regarding supervisors.

For the above reasons, Plaintiff's Motion regarding Interrogatory Number 5 is **GRANTED IN PART AND DENIED IN PART**. Defendant will not be compelled to

---

[46] ECF No. 100, pp. 10-12.
[47] *See, e.g., Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc.,* No. 208CV02220JWLDJW, 2009 WL 10668995, at *4 (D. Kan. Dec. 4, 2009) (stating a party cannot compel another party to change an interrogatory answer because they do not agree with the answer given).

identify employees (and their supervisors) from the "Intake" division if none of those employees made the final decision regarding C.S.'s placement. If, however, Defendant is aware of any other employees involved in making the final decision regarding C.S.'s placement, then Defendant should supplement its answer within 30 days of the date of this Order with the names of those employees, their supervisors, and their supervisors' supervisors.

### 5. <u>Interrogatory No. 6</u>

Interrogatory No. 6 asks Defendant to "[i]dentify each TFI employee and the child (by initial only) to whom the employee was assigned, in charge of TFI services provided for the children placed in the Wilkins' Home from 2000 to 2011, and their supervisors, and the supervisor's supervisors, and so on." As relevant here, Defendant answered by citing to Bates Nos. 11890-11891 and stating those documents contain "the initials of children in the Wilkins' home between 2000 and 10/13/2009, the case managers, their supervisors, and the supervisors' supervisors."

Plaintiff's issue with Defendant's answer appears to be that Defendant only provided the names of the case managers, their supervisors, and the supervisors' supervisors instead of providing names of supervisors all the way up to Defendant's CEO.[48] Defendant does not necessarily object to providing this additional information, but appears to assert that "so on" as used in the interrogatory is vague and ambiguous. While Plaintiff could have better described how many levels of supervision she was seeking in this

---

[48] ECF No. 100, pp. 10-12.

interrogatory, the Court will not deny Plaintiff's request for additional supervisor information on this basis.

Therefore, the Court **GRANTS** Plaintiff's Motion in relation to Interrogatory No. 6. Defendant shall provide the names of supervisors up to Defendant's CEO within 30 days of the date of this Order. Additionally, in its Response to Plaintiff's Motion, Defendant indicates it will supplement its answer to include information up through 2011.[49] If Defendant has not yet supplemented its answer, it shall do so within 30 days of the date of this Order.

### 6. <u>Interrogatory No. 8a and 8b</u>

Interrogatory No. 8a and 8b requests Defendant to:

8a. Identify each and every act and measure of oversight by TFI of the Wilkins' home from January 2008, through December 2009, as described in paragraph 25 of your Answer to C.S.'s Complaint.

8b. For each act and measure of oversight identified by you in response to the previous paragraph, identify how this was in accordance with the terms of your contract with the State of Kansas as described in paragraph 25 of your Answer to C.S.'s Complaint.

Defendant responded as follows:

In the defendant's answers to the complaints, defendant admitted "it was responsible for the oversight of the homes where TFI placed children referred to TFI in accordance with the terms of its contract with the State of Kansas." Defendant's answers at ¶ 25 did not describe any act or measure of oversight by TFI, let alone any act or measure of oversight of the of the Wilkins' home.

Plaintiff takes issue with Defendant's too literal interpretation of the interrogatory, and the Court agrees with that assessment. In its above answer, Defendant admits is was

---

[49] ECF No. 95, p. 7 n.2.

responsible for oversight of the foster homes where Defendant placed children, which would include the Wilkins' Home. Plaintiff is trying to ascertain what the oversight consisted of and how it was in accordance Defendant's contract with the State. Such questions are relevant to Plaintiff's claim Defendant is liable for failing to keep C.S. safe from alleged abuse occurring in the Wilkins' Home.

While the temporal scope of the interrogatory is appropriate, the Court finds Plaintiff's request to identify "each and every act and measure of oversight" overly broad and unduly burdensome. Instead, the Court believes the interrogatory should be narrowed to seeking the primary or principle acts of oversight performed by Defendant in relation to the Wilkins' Home from January 2008 through December 2009.[50] Accordingly, Plaintiff's Motion regarding Interrogatory No. 8 is **GRANTED**, and Defendant shall provide a full and complete answer to the interrogatory as narrowed by the Court within 30 days of this Order.

### 7. <u>Interrogatory Nos. 9 and 10</u>

Interrogatory Numbers 9 and 10 asks Defendant to:

9. Identify each and every action or measure TFI took to protect C.S. from any type of harm in the Wilkins' home.

10. Identify each and every act of ordinary care in the exercise of its services that TFI undertook with respect to C.S.

---

[50] *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 502 (D. Kan. 2006) (finding interrogatories asking for all facts overly broad and unduly burdensome and narrowing scope to principal and material facts).

After objecting that the interrogatories are facially overbroad, unduly burdensome, vague and ambiguous. Defendant answered both interrogatories by stating:

> [D]efendant has produced the case logs, reports, and critical incident reports reflecting the services and activities by defendant's employees with respect to C.S. while placed in the Wilkins' home. These documents generally describe the actions by TFI personnel.

To the extent these interrogatories ask for "each and every" act taken by Defendant, the Court agrees such request is overbroad and unduly burdensome. The interrogatories should be limited to the principal and material acts taken by Defendant.[51] Given the allegations of abuse in this case, the Court does not find the phrase "any type of harm in the Wilkins' home" in Interrogatory No. 9 to be vague or ambiguous. It is clear to the Court Plaintiff is referring to the allegations of abuse outlined in the Complaint.

The Court, however, does find the phrase "act of ordinary care in the exercise of its services" in Interrogatory No. 10 to be vague and ambiguous. But Plaintiff provides clarity in her Reply brief. There, Plaintiff explains when C.S. was referred to Defendant for services, it agreed, per its contract with the State, to provide for the safety and well-being of C.S.[52] Plaintiff is therefore seeking information regarding the acts Defendant took to ensure the safety and well-being of C.S. while in Defendant's care.[53]

As with Interrogatories 1-4 above, Plaintiff argues Defendant's answer referring her to "case logs, reports, and critical incident reports" is improper under Rule 33(d). Plaintiff insists an unequal and substantial burden would be imposed if she has to examine these

---

[51] *Id.*
[52] ECF No. 100, pp. 13-14.
[53] *See id.*

voluminous documents and then speculate as to what information contained in the documents are responsive to the interrogatories. Plaintiff asks the Court to compel Defendant to answer the interrogatories without the option of referencing business records.

Plaintiff should not have to wade through voluminous documents, for which Defendant fails to provide bates numbers,[54] and have to guess at which actions taken by Defendant are responsive to the interrogatories. Defendant, on the other hand, has the knowledge to review its records and identify the actions it took to protect C.S. from the alleged abuse occurring in the Wilkins' Home and generally provide for C.S.'s safety and well-being while C.S. was in Defendant's care.[55]

For the above reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion as to Interrogatories Numbers 9 and 10. The Court narrows the scope of the interrogatories to identification of the principal and material acts taken by Defendant (1) to protect C.S. from the alleged abuse occurring in the Wilkins' Home and (2) to provide for C.S.'s safety and well-being while in Defendant's care. Defendant shall not be allowed to only reference business records in responding to these narrowed interrogatories. It may however, list the actions it took (e.g., "ensured C.S. received regular medical, dental and mental health care services") and then refer to documents describing those actions in detail

---

[54] *See* cases cited *supra* note 35.
[55] *See, e.g., Heartland Surgical Specialty Hosp., LLC*, 2007 WL 2192860, at *1 (stating the court would not require one party to fathom what another party may elect to contend as claims from the documents that had been produced, even when the data was equally available to both parties) (citing *Hoffman v. EEOC*, 117 F.R.D. 436, 438 (D. Kan. 1987)).

as long as specific bates numbers for the various documents are provided.  Defendants shall so respond within 30 days from date of this Order.

### 8.    Interrogatory No. 11

This interrogatory asks Defendant to:

> Identify the extent to which TFI Family Services, Inc., undertook governmental duties on behalf of the State of Kansas as described in paragraph 2, 10, 11, 14, 16, 18, 23, 25, and 40 of its Answer to C.S.'s Complaint.

Defendant responded as follows:

> Defendant did not undertake governmental duties.  Defendant is a private, non-profit corporation that provided services pursuant to a contract with the State of Kansas.

Plaintiff argues Defendant's answer is evasive and incomplete.  Defendant responds its answer is complete.  Defendant states there are no facts to identify because it cannot undertake governmental duties as a private corporation contracting with the State.

In the above-referenced paragraph numbers in Defendant's Answer to C.S.'s Complaint, Defendant admits it is a private entity that previously contracted with the State of Kansas to (1) provide placement services on behalf of foster children (including C.S.) referred to it by the State in accordance with its contract;[56] (2) provide oversight of the homes where it placed foster children, as required by the State contract;[57] and (3) to provide services for C.S. pursuant to the terms of the State contract.[58]

---

[56] ECF No. 41, ¶¶ 2, 10, 11, 14, 16, 18, 23.
[57] *Id.* at ¶ 25.
[58] *Id.* at ¶ 40.

The Court is unclear what further information Plaintiff is seeking in Interrogatory No. 11. Defendant's Answer describes the services it agreed to perform pursuant to its contract with the State in the above-referenced paragraphs. To the extent Plaintiff is trying to ask Defendant to admit its performance of these services were "governmental duties" to challenge any future legal argument Defendant may make that it is not a state actor, such interrogatory is improper.[59] To the extent Plaintiff is inquiring about what these services entailed, how Defendant went about fulfilling these services, whether these services were performed without any State input, whether these services were actually performed in part by the State, or something else entirely, Plaintiff should propound a more clear and direct interrogatory. Plaintiff's Motion therefore is **DENIED** with respect to Interrogatory No. 11.

### 9. <u>Interrogatory No. 12</u>

Interrogatory Number 12 states:

Identify each and every factual basis which TFI Family Services, Inc. believes is material to its position that it is not a State Actor as described paragraph 53 of its Answer to C.S.'s Complaint.

Defendant answered:

Objection. It is an impossible burden to state every fact that proves a negative. Defendant did not undertake governmental duties and defendant is not a State Actor. Subject to the foregoing objection, defendant is not a State Actor as a matter of law. See defendant's motion to dismiss (ECF No. 7 and Exhibits) and the reply in support of defendant's motion to dismiss (ECF No. 21) for the principal and material facts in support thereof.

---

[59] *Steil v. Humana Kansas City,* Inc., 197 F.R.D. 445, 447 (D. Kan. 2000) (stating interrogatories may not extend to issues of "pure law") (internal citations omitted).

Plaintiff argues Defendant's answer is evasive and incomplete, while Defendant responds it has fully answered to the extent possible.  As with previous interrogatories, the Court finds Plaintiff's request for "each and every" fact overbroad and unduly burdensome, and will narrow the scope to identification of principle and material facts.[60]

Whether a private entity is a state actor for purposes of § 1983 liability can be a mixed question of law and fact.[61]  Rule 33(a)(2) states an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  Therefore, because Defendant contends it is not a state actor for purposes of avoiding § 1983 liability, Plaintiff is entitled to know what facts, if any, Defendant is relying on in contending it is not a state actor.

Here, apparently pursuant to Rule 33(d), Defendant identifies its relied-upon facts by directing Plaintiff to its previously-filed Motion to Dismiss and supporting Memorandum, Exhibits, and Reply.[62]  Not only do these documents contains 235 pages, they do not appear to be Defendant's business records.[63]  Rule 33(d) can only be invoked when referencing a party's business records.[64]  Furthermore, business records cannot generally be used to answer contention interrogatories.[65]

---

[60] *See* case cited *supra* note 50.

[61] *See* Judge Marten's November 29, 2017 Memorandum and Order, pp. 3-4 (ECF No. 34) (describing the various legal tests for determining whether a private actor may be treated as state actor).

[62] *See* ECF Nos. 6, 7, 7-1 through 7-24, and 21.

[63] *See id.*

[64] Fed. R. Civ. P. 33(d) (plain language of rule states "a party's business records"); *Pulsecard, Inc.*, 1996 WL 397567, at *4 (party may not use Rule 33(d) if the documents are not its own business records).

[65] *See supra* note 39 and accompanying text.

Plaintiff's Motion regarding Interrogatory No. 12 is therefore **GRANTED**. Within 30 days of the date of this Order, Defendant shall supplement its answer by providing the principal and material facts it relies on in contending it is not a state actor.

### 10. <u>Interrogatory No. 13</u>

Interrogatory No. 13 asks Defendant to:

> Identify each and every factual basis which TFI Family Services, Inc. believes is material to its position that it is entitled to qualified immunity, as described in paragraph 54 of its Answer to C.S.'s Complaint.

Defendant answered by stating:

> Defendant is not a state actor subject to liability under 42 U.S.C. § 1983. In the event qualified immunity applies, defendant would be entitled to the defense because defendant did not violate any clearly established law. *See White v. Pauly*, 137 S.Ct. 548, 551 (2017). It is an impossible burden to state every fact that proves a negative.

The parties' arguments respecting this interrogatory are similar to Interrogatory No. 12. Accordingly, so are the Court's findings. Just as with Interrogatory No. 12, the Court finds the scope should be narrowed to identification of principal and material facts.

Just as with the state actor analysis, whether qualified immunity applies can also be a question of law and fact.[66] Therefore, Plaintiff can inquire into the factual basis of why Defendant believes it is entitled to qualified immunity. In its response to the interrogatory, Defendant states qualified immunity would apply because it "did not violate any clearly established law." The Court is unsure whether this means Defendant did not act in such a

---

[66] *See, e.g., White v. Pauly*, 137 S. Ct. 548, 551 (2017) (stating qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known) (internal quotation marks and citations omitted).

way to violate any clearly established law, or whether there are no applicable "clearly established laws." If it is the first, surely Defendant can articulate the principal and material facts it believes supports its assertion it did violate any clearly established law. If, on the other hand, Defendant does not believe there are any "clearly established laws" particular to this lawsuit within the confines of the qualified immunity doctrine, it should so state.[67]

Based on the above, Plaintiff's Motion regarding this interrogatory is **GRANTED**, and Defendant should supplement its answer in accordance with above paragraphs within 30 days of this Order.

### 11.     Interrogatory No. 14a and b

Interrogatory No. 14a and 14b states:

> 14a. Identify each and every factual basis which TFI Family Services, Inc. believes is material to its position that fault should be compared to Plaintiffs, Deloris "Dee" Wilkins, Earl "Wayne" Wilkins, DCF, KDHE, the City of Eire Police Department, medical providers that examined and/or treated C.S. during the period she was placed in the Wilkins' home, as described in paragraph 55 of its Answer to C.S.'s Complaint.
>
> 14b. For each factual basis identified in your response, identify the percentage to which TFI assigns fault.

As relevant here, Defendant responded:

> [D]efendant states that if plaintiffs were in fact subjected to abuse and/or neglect, plaintiffs, Deloris "Dee" Wilkins, Earl "Wayne" Wilkins, DCF, KDHE, the City of Erie Police Department, medical providers that examined and/or treated C.S. all withheld that information from defendant's employees. Defendant cannot identify a percentage of fault.

---

[67] *See id.* (explaining that while the Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate) (internal quotation marks and citations omitted).

The Court finds it hard to ascertain Plaintiff's issue with Defendant's answer. Plaintiff appears to argue Defendant did not correctly answer the interrogatory. Plaintiff states during the pendency of this case, Defendant has "expressly admitted it intended to defend itself by throwing DCF under the bus, *i.e.* [Defendant] intends to rely on DCF's investigations of allegations of abuse or neglect occurring in the Wilkins' home for [Defendant's] decision to place or leave foster children in the Wilkins' foster home."[68] Plaintiff, therefore, seems to be arguing Defendant should have included this information in its answer, or somehow answered differently than it did.

Defendant, however, insists it fully answered the interrogatory. Defendant argues it identified the facts by stating if C.S. were subject to abuse and/or neglect, then all of the individuals identified withheld that information from Defendant. Defendant further stated it could not identify a percentage of fault. Defendant, therefore, believes Plaintiff is merely dissatisfied with its answer, which is not a valid objection. The Court agrees. Plaintiff cannot compel Defendant to change its answer because Plaintiff does not believe the answer is correct.[69]

Plaintiff also argues Defendant has improperly refused to answer Interrogatory 14b, which asks Defendant to assign a percentage of fault to each listed individual/entity. Plaintiff contends this is a proper contention interrogatory that must be answered. The Court, however, does not view this as a proper contention interrogatory.

---

[68] ECF No. 100, p. 16.
[69] *See, e.g., Thermal Sols., Inc.*, 2009 WL 10668995, at *4 (stating a party cannot compel another party to change an interrogatory answer because they do not agree with the answer given).

Rule 33 does expressly permit contention interrogatories. It provides, in relevant part: "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to a fact or the application of law to a fact"[70] But while Rule 33(b) provides authority for parties to utilize contention interrogatories, also embodied within the language is "the notion that a distinction exists between permissible contention interrogatories and inquiries into issues of pure law."[71]

Interrogatory No. 14b does not ask for an opinion or contention relating to a fact or an application of law to a fact. The inquiry does not relate to any facts at all. Rather, Plaintiff asks for Defendant's opinion regarding what will ultimately be an issue for the jury when it applies the law to the facts presented at trial. Defendant itself is not in the position to have an opinion about purely legal issues or ultimate issues for the jury.[72] And, to the extent this interrogatory is seeking counsel's views regarding the percentage of fault that should be allocated, such an opinion is likely protected from disclosure by the attorney work product doctrine.[73] For these reasons, the Court finds Interrogatory 14b improper and will not compel Defendant to further supplement its answer.

---

[70] Fed. R. Civ. P. 33(a)(2).

[71] *Encon Int'l, Inc. v. Garrahan,* No. 11-2137-KGS, 2013 WL 12250907, at *1 (D. Kan. Jan. 16, 2013); *see also* Fed. R. Civ. P. 33 advisory committee's note to the 1970 amendment (stating that under the amendment permitting contention interrogatories, interrogatories may not extend to issues of pure law).

[72] *See Encon*, 2013 WL 12250907 at *1-2, n.6 (citing and quoting 10A John Kimpflen, et al., *Federal Procedure*, § 26:583 for the proposition that an interrogatory seeking pure legal conclusions is not permissible, "the theory being that it is pointless to ask a layperson to expound legal theories").

[73] *Id.* at *2.

Based on the above, Plaintiff's Motion relating to Interrogatory No. 14a and 14b is

**DENIED**.

## 12. <u>Interrogatory No. 15</u>

This interrogatory asks Defendant to "[i]dentify each civil penalty incurred by TFI as described by you in paragraph 36 of your Answer to C.S.'s Complaint, or attach a copy of the payment." Defendant answered:

> Objection. This interrogatory is facially overbroad as it is not limited in temporal scope. *See Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 675 (D. Kan. 2003). The referenced paragraphs admit that defendant has paid civil penalties to KDHE from defendant's bank account; no time limit has been provided regarding civil penalties paid by TFI. This request is not relevant to either party's claim or defense and is not proportional to the needs of the case. No civil penalties were paid due to the placement of C.S. in the Wilkins' home. Finally, Defendant's answers do not describe any civil penalty.

Plaintiff argues this response is an unreasonably narrow construction of Plaintiffs' interrogatory, and amounts to a refusal to answer the question. Defendant insists its response is appropriate because paragraph 36 of its Answer does not "describe" any civil penalties, and further the interrogatory is overbroad and irrelevant.

Paragraph 36 of Plaintiff's Answer states "Defendant admits that it paid civil penalties to the Kansas Department of Health and Environment from Defendant's bank account."[74] Plaintiff's interrogatory is asking Defendant to identify those civil penalties. The Court finds Plaintiff's question clear, and agrees Defendant is unreasonably construing the interrogatory based on the word "described." The Court reminds Defendant that

---

[74] ECF No. 41.

"[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made . . . ."[75]

As to the interrogatory being overbroad and irrelevant, these issues have already been decided by the Court in its June 8, 2018 Memorandum and Order. There, the Court held Plaintiff could obtain information relating to KDHE[76] administrative cases filed against Defendant from 2005 to 2013 involving inappropriate placements.[77] The Court finds the same limitations appropriate here. Therefore, Plaintiff's Motion regarding Interrogatory No. 15 is **GRANTED**. Within 30 days of the date of this Order, Defendant must supplement its answer to provide a list of civil penalties it paid from 2005 to 2013 where an inappropriate placement was involved. Defendant should also list the amount of the penalty and when it was paid.

### 13.    <u>Interrogatory No. 16</u>

Interrogatory No. 16 reads:

Describe your understanding of the definition of and distinction between the terms "unsubstantiated," and "substantiated" as used by SRS, a/k/a DCF in the context of a hotline report and/or SRS a/k/a DCF investigation of abuse or neglect concerning a foster child, from 1999, through 2012.

Defendant responded:

Incidents and allegations are reported to the DCF hotline; "hotline reports" are not substantiated or unsubstantiated. Assuming plaintiffs ask defendant to define "substantiated" and "unsubstantiated" reports of abuse or neglect after DCF's investigation, defendant applies the definition provided in K.A.R. 30-46-10. Defendant notes the definition changed in 2004. Prior to 2004, a report of abuse or neglect was substantiated when it was confirmed

---

[75] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011).
[76] Kansas Department of Health and Environment.
[77] *See* June 8, 2018 Memorandum and Order, pp. 16-17, 21-22 (ECF No. 89).

by a preponderance of the evidence. Beginning in 2004, a report of abuse or neglect is substantiated when it has been confirmed by clear and convincing evidence.

As with several previous interrogatories, Plaintiff seems to be arguing Defendant's answer, in Plaintiff's opinion, is not correct. Plaintiff implies Defendant's "understanding" of the definition of the terms "substantiated" and "unsubstantiated" should, for some reason, differ from the regulatory definition cited above.[78] In its Response to Plaintiff's Motion, Defendant clarifies as follows:

> Plaintiffs asked defendant to describe its understanding of the definition of and distinction between the terms "unsubstantiated" and "substantiated." As stated in its response, defendant's understanding of the definition of "unsubstantiated" and "substantiated" is the definition provided by K.A.R. 30-46-10. Plaintiffs are not satisfied with this request and suggest that defendant has a different understanding of the definition. It does not. Defendant has fully answered the interrogatory.[79]

As stated previously, Plaintiff cannot compel Defendant to change its answer merely because she does not agree with the one provided.[80] Plaintiff's Motion is therefore **DENIED** as it relates to Interrogatory No. 16.

### D. Conclusion

For the reasons stated above, Plaintiff's Second Motion to Compel (**ECF No. 91**) is **GRANTED IN PART AND DENIED IN PART**.

---

[78] *See* ECF No. 100, p. 17.
[79] ECF No. 95, p. 11.
[80] *See, e.g., Thermal Sols., Inc.*, 2009 WL 10668995, at *4 (stating a party cannot compel another party to change an interrogatory answer because they do not agree with the answer given).

### III. Expenses under Fed. R. Civ. P. 37(a)(5)

Pursuant to Rule 37(a)(5), if a motion to compel is granted, the court must require the party whose conduct necessitated the motion to pay expenses incurred in making the motion unless circumstances make such an award unjust.[81]  If such a motion is denied, the court must require the movant to pay the opposing party its reasonable expenses.[82]  Here, however, Plaintiff's Motion is granted in part and denied in part.  Under these circumstances, the Court finds it appropriate and just to decline an award of expenses to either party.[83]  Therefore, each party will bear their own expenses incurred relating to the Motion.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 18th day of January, 2019.

 s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate

---

[81] Fed. R. Civ. P. 37(a)(5)(A).

[82] Fed. R Civ. P. 37(a)(5)(B).

[83] *See* Fed. R Civ. P. 37(a)(5)(C) (when a motion to compel is granted in part and denied in part, a court has discretion in deciding whether to award expenses).