# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

COURTNEY SMITH,                              )
                            Plaintiff,       )
                                             )
   vs.                                      )
                                             )        **Case No. 17-02235-JWB-GEB**
TFI FAMILY SERVICES, INC., et. al.,          )
                                             )
                            Defendants.      )
_____ )

## MEMORANDUM AND ORDER

This matter is before the Court on (1) Plaintiff's Motion for Order Against Defendant State of Kansas Department for Children and Families[1] to Show Good Cause Why it Should not be Held in Contempt and Motion for Sanctions (**ECF No. 143**) and (2) Individual Defendants' Motion to Stay Discovery (**ECF No. 163**). After careful contemplation of the Motions, Memorandums in Support (ECF Nos. 144 and 164), Responses (ECF Nos. 148 and 168), Reply (ECF No. 154)[2] and all attached exhibits, the Court **DENIES** Plaintiff's Motion for Order Against Defendant State of Kansas Department for Children and Families to Show Good Cause Why it Should not be Held in Contempt and Motion for Sanctions and **DENIES AS MOOT** the Individual Defendants' Motion to Stay Discovery.

---

[1] The State of Kansas Department for Children and Families is no longer a Defendant in this case. (*See* ECF No. 145.)
[2] The individual defendants did not file a reply regarding their Motion to Stay Discovery.

## I. Nature of the Case

On April 23, 2017, Plaintiff filed a Complaint against Defendant TFI Family Services, Inc. ("Defendant TFI").[3] Defendant TFI is a private company that formerly contracted with the Kansas State Department of Children and Families ("DCF") to provide placement services for foster children in State custody.[4] In 2008, Plaintiff was placed in DCF custody and referred to Defendant TFI for placement services.[5] Defendant TFI placed Plaintiff in the home of Delores and Earl Wilkins ("Wilkins' Home") from October 2008 through mid-2009.[6] Plaintiff alleges: 1) she suffered physical and emotional abuse while residing in the Wilkins' Home;[7] and 2) claims Defendant TFI knew, or should have known, abuse was occurring at the Wilkins' Home, but recklessly choose to place Plaintiff there anyway.[8] Thus, Plaintiff claims Defendant TFI is liable for failing to keep her safe from the alleged abuse, and asserts damages under 42 U.S.C. § 1983 and state tort law.[9]

On April 16, 2019, with leave of Court,[10] Plaintiff filed an Amended Complaint adding DCF; Laura Howard, Secretary of DCF, in her official capacity; and five individual DCF employees in their personal capacities as Defendants, making similar allegations as made against Defendant TFI, including a claim DCF failed to properly supervise TFI.[11]

---

[3] ECF No. 1.
[4] ECF No. 41, ¶ 2.
[5] ECF No. 1, ¶¶ 45-46.
[6] C.S.'s Complaint states she resided in the Wilkins' Home until May of 2009. (ECF No. 1, ¶ 51.) Defendant, however, states C.S. resided there until October of 2009. (ECF No. 69, pp. 2-3.)
[7] ECF No. 1, ¶ 5.
[8] *Id*. at ¶¶ 68-121.
[9] *Id.* at ¶¶ 68-124.
[10] ECF No. 132.
[11] ECF No. 134.

However, on May 14, 2019, Plaintiff voluntarily dismissed her claims against both DCF and Howard.[12] But, Plaintiff's claims against the individual DCF employees remain, although these Defendants have a Motion to Dismiss pending before the District Judge.[13]

Currently before the Court are Plaintiff's Motion for Order Against DCF to Show Good Cause Why it Should not be Held in Contempt and Motion for Sanctions[14] and (2) the Individual DCF Defendants' Motion to Stay Discovery.[15] Each Motion will be addressed in turn, with relevant facts discussed as necessary.

## II. Plaintiff's Motion for Order Against DCF to Show Good Cause Why it Should not be Held in Contempt and Motion for Sanctions (ECF No. 143)

### A. Relevant Background

On May 8, 2018, the Court conducted an in-person hearing regarding DCF's Amended Motion to Quash Subpoena ("Motion to Quash").[16] The Motion to Quash concerned a subpoena Plaintiff sent to DCF seeking various categories of records.[17] At the conclusion of the hearing, the Court stated it would take the Motion to Quash under advisement and issue a written ruling by June 8, 2018, but in the meantime directed Plaintiff and DCF to further confer regarding the subpoena after having the benefit of hearing each other's oral argument.[18] On May 22, 2018, DCF filed a Certificate of Compliance describing the discussions it had with Plaintiff's counsel to resolve their

---

[12] ECF No. 145.
[13] ECF No. 161.
[14] ECF No. 143.
[15] ECF No. 163.
[16] *See* ECF Nos. 39 and 77.
[17] *See* ECF Nos. 39, 40, and ECF No. 42-1 for a copy of the subpoena.
[18] ECF No. 79; ECF No. 89, p. 5.

disputes, including its intention to produce records responsive to several of the categories in Plaintiffs' subpoena.[19]

On June 8, 2018, the Court entered a written order granting in part and denying in part the Motion to Quash ("June 8, 2018 Order" or "Order").[20]  As relevant here, after noting DCF's Certificate of Compliance and its agreement to produce many of the requested records, the Court found the only remaining issues were whether DCF should produce files for non-party minors L.W., T.B.-W., C.N. and K.L, and files for the children who were the subject of any civil action filed by Kansas Department of Health and Environment ("KDHE") against Defendant TFI between 2005 and 2012.[21]  The Court ordered DCF to produce those files subject to certain limitations.  The files for L.W., T.B.-W., C.N. and K.L. were to be produced for  the dates pertaining to the year before to the year after certain incidents described by Plaintiff.[22]  The records of children who were the subject of actions filed by KDHE against TFI between the time period of  2005 and 2012 were to be restricted to only those actions involving inappropriate placements and limited to the year before to the year after the placements at issue.[23]

The Court ordered DCF to produce these records by July 31, 2018.[24]  Any responsive records subject to in-camera review pursuant to K.S.A. § 38-2212(e) were to be

---

[19] ECF Nos. 81-84; ECF No. 89, pp. 5-6.
[20] ECF No. 89.
[21] *Id.* at pp. 5-6.
[22] *Id.* at pp. 12-18.
[23] *Id.*
[24] *Id.* at p. 23.

produced directly to the Court for review.[25]   All other responsive records were to be produced directly to Plaintiff.[26]   DCF timely produced the records by July 31, 2018.[27]   On October 24, 2018, after a review of the above records submitted in-camera, the Court entered an order directing DCF to produce most of those documents to Plaintiff by November 30, 2018.[28]   DCF timely produced these records to Plaintiff.[29]

On May 6, 2019, Plaintiff filed the instant Motion.[30]   In the Motion, Plaintiff argues DCF failed to comply with the Court's June 28, 2018 Order because its November 30, 2018 production to Plaintiff did not contain certain types of electronically stored information ("ESI") in native format with associated metadata.[31]   Instead, DCF produced the court-ordered documents (consisting of 5,767 pages) in PDF format on a USB flash drive.[32]   As relief for this alleged failure, Plaintiff asks this Court to issue an order:  (1) requiring DCF to show good cause for why it should not be held in contempt of the Court's June 28, 2018 Order; (2) requiring DCF to show good cause why it should not produce the requested ESI; and (3) imposing various sanctions on DCF pursuant to Fed. R. Civ. P. 37(b)(2)(A) for not obeying a discovery order.[33]   Each request, after a discussion of the duty to confer, is addressed below.

---

[25] *Id.*
[26] *Id.*
[27] ECF No. 101.
[28] ECF No. 110. (The Court ordered that some documents should be withheld or redacted.)
[29] ECF No. 114.
[30] ECF No. 143.
[31] *See generally* ECF No. 144.
[32] ECF No. 144, p. 4 at ¶ 1.
[33] *Id.* at p. 14.

## B.     Duty to Confer

As a threshold matter, the Court first considers whether Plaintiff and DCF have sufficiently conferred regarding Plaintiff's Motion, as is required by D. Kan. Rule 37.2.[34] A review of the briefs and attached exhibits indicates counsel for Plaintiff and DCF conferred over a span of several months following DCF's November 30, 2018 production of documents regarding the thrust of Plaintiff's ESI issues.[35]   While counsel conferred through email on multiple occasions and also in-person, the Court, as explained more fully below, finds this conferral would have been much more productive had it occurred **<u>before</u>** DCF produced the documents in PDF format.[36]   Nevertheless, the Court finds counsel adequately conferred as required by D. Kan. Rule 37.2.

## C.     Contempt of Court

### 1.     Contempt Authority of United States Magistrate Judges

Plaintiff asks the Court to issue an order requiring DCF to show good cause for why it should not be held in contempt for failing to comply with the Court's June 8, 2018 Order relating to the subpoena Plaintiff served on DCF.  Pursuant to Fed. R. Civ. P. 45(e), a court

---

[34] This Local Rule provides the court will not entertain certain discovery motions unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.  D. Kan. Rule 37.2.

[35] ECF Nos. 144, p. 9; ECF Nos. 144-4 through 144-13.

[36] Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment ("Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs."); *see, e.g., White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1264-65 (D. Kan. 2008) (noting discovery dispute could have been avoided if adequate conferral happened before production of documents).

"may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it."

In general, United States magistrate judges only have the power to exercise contempt authority as set out in 28 U.S.C. § 636(e).[37] In cases like this one, where the magistrate judge is acting under 28 U.S.C. § 636(b), there are three scenarios which require the magistrate judge to certify facts to the district judge regarding contempt: (i) the alleged act constitutes a serious criminal contempt committed in the presence of the magistrate judge; (ii) the alleged act constitutes a criminal contempt but occurred outside the presence of the magistrate judge; and (iii) the act constitutes a civil contempt.[38]

"Under the certification process, the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue an order of contempt."[39] The magistrate judge may also "decline[] to certify the conduct to the district court for a determination of contempt."[40] Certification of facts is required under § 636(e)(6)(B) only when the magistrate judge is satisfied one of the three enumerated scenarios is present. In the absence of one of those scenarios and a certification of facts to support finding the actor in contempt, there is simply no need for a district judge to determine whether the actor "should not be adjudged in contempt by reason of the facts so certified."[41]

---

[37] *See* 28 U.S.C. § 636(e)(1).
[38] 28 U.S.C. § 636(e)(6)(B)(i)-(iii).
[39] *E.E.O.C. v. Midwest Health Inc.*, No. 12-MC-240-KHV-GLR, 2013 WL 1502075, at *1 (D. Kan. Apr. 11, 2013) (quoting *Bowens v. Atl. Maint. Corp.*, 546 F.Supp.2d 55, 71 (E.D.N.Y. 2008)).
[40] *Id.* (quoting *Bowens*, 546 F.Supp.2d at 72).
[41] *Id.*; 28 U.S.C. § 636(e)(6)(B).

As stated above, pursuant to Rule 45(e), Plaintiff seeks a finding of contempt for the alleged failure of DCF to comply with the Court's June 8, 2018 Order regarding Plaintiff's subpoena. Because the alleged contemptuous act occurred outside the presence of the undersigned Magistrate Judge, § 636(e)(6)(i) is not implicated. And, as discussed more fully in the next section, Plaintiff has not provided sufficient evidence to find the alleged contemptuous act constitutes criminal or civil contempt. Consequently, § 636(e)(6) requires no certification of facts to be submitted to the District Judge.

### 2. Discussion

#### a. Legal Standard Regarding Contempt

Those who fail to obey a valid court order may be subject to civil and criminal penalties for contempt.[42] Civil penalties are coercive in nature, whereas criminal ones serve "punitive and deterrent" purposes.[43] More specifically, "[c]riminal contempt is used to punish the contemnor or vindicate the court's authority; civil contempt seeks to coerce the contemnor into compliance with the court's order or to compensate the complaining party for losses incurred as a result of the contemnor's conduct."[44]

---

[42] *E.E.O.C.*, 2013 WL 1502075, at *2.

[43] *Id.* (quoting *Yates v. United States*, 355 U.S. 66, 74 (1957)).

[44] *Id.* (quoting *Bowens*, 546 F.Supp.2d at 63); *see also O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (stating sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: (1) to compel or coerce obedience to a court order and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance).

A finding of contempt requires the Court to conclude the person alleged to be in contempt violated a "specific and definite court order."[45]  The moving party has the "burden of proving, by clear and convincing evidence, that a valid court order existed, that the [alleged contemnor] had knowledge of the order, and that the [alleged contemnor] disobeyed the order."[46]  Once the movant makes the requisite showing, the burden shifts to the alleged offender to either show compliance with the order or that compliance was not possible.[47]

### b.    Analysis

Here, Plaintiff complains DCF produced records in PDF format rather than producing certain types of ESI in their original, native format with associated metadata. Plaintiff argues the Court's June 8, 2018 Order required the information to be produced in such a manner.  However, the June 8, 2018 Order did not direct what types of ESI should be produced or in what format the records should be produced.  Those issues were not before the Court.  Rather, the Court ruled on the scope of the subpoena, *i.e.*, what specific categories of information should be produced.[48]  With that being said, however, the Court *would* expect DCF to look to the language of the subpoena regarding any particular requested format or ESI.[49]

---

[45] *Lucre Management Group, LLC v. Schempp Real Estate, LLC*, 365 F.3d 874, 875 (10th Cir. 2004) (quoting *In re Nielsen*, 53 F.3d 342 (Table), 1995 WL 247461, at *1 (10th Cir. April 27, 1995)).

[46] *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008) (citation omitted).

[47] *Id.*

[48] *See generally* ECF No. 89.

[49] The Court would also expect the parties to consult an ESI Protocol, if one is on file.  Here, however, there is no ESI Protocol on file and DCF is not party to the case.

In this case, the subpoena asks for the records to be produced in "electronic format," but gives no specifics regarding whether the format should be PDF or native format with metadata intact. Nor does the subpoena define the types of ESI Plaintiff is requesting.[50] In contrast, Plaintiff's Motion states Defendant should have produced the following six types of ESI: (1) email messages, in native format with associated metadata, from DCF's email system matching provided search criteria; (2) email messages, in native format with associated metadata, from DCF's email backup/archive system matching provided search criteria; (3) documents, in native format with associated metadata, stored within DCF's SharePoint collaboration system matching the provided search criteria; (4) instant messaging (IM) "chat" conversation transcripts matching provided search criteria; (5) documents, in native format with associated metadata, stored within DCF"s "Home Drives" system; and (6) documents, in native format with associated metadata, stored on portable USB hard-drives used by DCF employees.[51]

The Court is at a loss as to why Plaintiff would believe the June 8, 2018 Order required Defendant to produce the six above types of ESI when the subpoena did not specify it and the matter was not presented to the Court for consideration. The Court ordered DCF to produce its files, subject to time and subject matter limitations, for certain

---

[50] For comparison, Plaintiff's document requests to Defendant TFI specifies that electronic data "shall be produced in its native original format, in its original format with all metadata." *See* ECF No. 60-1, p. 2 at (d); ECF No. 60-2, p. 2 at (d). These document requests also elaborately define what information should be classified as ESI. *Id.* at pp. 2-4; *see also* Fed. R. Civ. P. 45(a)(1)(A)(iii) ("Every subpoena must . . . command each person to whom it is directed to . . . produce *designated . . . electronically stored information . . .*") (emphasis added).
[51] ECF No. 144, pp. 11, 14.

minors.[52]  The Court never ordered Plaintiff to provide search terms to DCF.  The Court understands Plaintiff, through these six types of ESI, is essentially seeking the native format and metadata for the PDF documents DCF produced, but the subpoena is not specific, and the Court was not asked to rule on these issues.[53]

In an effort to sidestep the language of the subpoena and scope of the June 28, 2018 Order, Plaintiff argues all document requests automatically encompass and require the production of ESI, including native format and metadata.  Thus, Plaintiff reasons because the Court found the records at issue relevant, the associated ESI must automatically be produced.  In support, Plaintiff cites the advisory committee notes on the 2006 amendments to Rule 34.[54]  Those notes state a "request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information unless discovery in the action has clearly distinguished between electronically stored information and 'documents.'"[55]  The committee notes go on to explain that "electronically stored information" as referenced in the federal rules is "expansive and includes any type of information that is stored electronically" and is "intended to be broad enough to cover all current types of computer-based information, and flexible enough to encompass future changes and developments."[56]  However, the committee notes also

---

[52] ECF No.  89, pp. 12-18.

[53] *See* ECF No. 154, pp. 9-10 (Plaintiff states the heart of her complaint is that native format and metadata was not produced).

[54] While subpoenas are governed by Fed. R. Civ. P. 45, the 2006 advisory committee notes to Fed. R. Civ. P. 34(a) make clear the general discussion of ESI applies to Fed. R. Civ. P. 45.

[55] Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.

[56] *Id.*

provide that while the term "electronically stored information" is broad, "whether material that falls within this term should be produced, and in what form, are separate questions that must be addressed under Rules 26(b), 26(c), and 34(b)."[57]

Rule 26(b), in particular, addresses relevancy and proportionality of discovery.[58] While the Court did find the substance of the minors' files to be relevant to the case at hand, it was not asked to decide, and did not rule on, the relevancy of production in native format with metadata intact. As explained more fully in the section below, the Court, based on Plaintiff's arguments, does not find re-production of the records in native format with metadata intact would provide any further relevant information than what is already available in the PDF documents. And, as also discussed below, the Court is concerned about the proportionality and burden of having a non-party re-produce the records in native format when the documents have already been produced in PDF format.

Plaintiff also maintains Guideline 24 of the District's Guidelines for Cases Involving Electronically Stored Information mandates the disclosure of ESI. However, Guideline 24 addresses initial disclosures under Rule 26(a)(1) and states such disclosures "must include any ESI that the disclosing party may use to support its claims or defenses

---

[57] *Id.*

[58] Fed. R. Civ. P. 26(b)(1) (stating "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

(unless used solely for impeachment)."[59]  Here, DCF is not a party and is not required to make initial disclosures.

Additionally, regarding format, Rule 45(e)(1)(B)[60] provides if "a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Rule 45(e)(1)(C) also states the "person responding to the subpoena need not produce the same electronically stored information in more than one form."  In DCF's Response brief, it states it produced the records in a reasonably usable form, *i.e.*, in PDF format on a USB flash drive.[61]

Plaintiff does not directly dispute DCF produced the records in a reasonably usable form, but does argue the PDF documents are not searchable.[62]  However, many of the documents in DCF's files are from third-parties, *e.g.*, courts, medical providers, law enforcement agencies, or third-party contractors like Defendant TFI.[63]  According to DCF, those records are received as paper files and scanned into PDFs.[64]  According to Plaintiff's expert, these are called image-based PDFs and, by their nature, cannot be searched.[65]  But neither could the records be searched if they were produced in paper format.  Because many of the records were not created by DCF, it is limited to the form of production.  And,

---

[59] *See* ESI Guideline 24(a) at http://ksd.uscourts.gov/index.php/rules/.
[60] Plaintiff cites to Fed. R. Civ. P. 34 throughout her briefs, but this issue involves a subpoena and therefore is controlled by Fed. R. Civ. P. 45.
[61] ECF No. 148, p. 5 n.2.
[62] ECF No. 154, p. 5.
[63] ECF No. 144-7; ECF No. 148, pp. 4-5 n.1
[64] ECF No. 144-7.
[65] ECF No. 154-1, p. 1 at ¶ 6.

considering Plaintiff asked for the records to be produced in electronic format (as opposed to hard copies), the Court finds it reasonable for DCF to have produced all the records in PDF format on an USB flash drive.

c.      Conclusion

In conclusion, Plaintiff cannot point to a "specific and definite"[66] section of the Court's June 8, 2018 Order requiring specific types of ESI be produced or requiring records be produced in native format with associated metadata. Additionally, the Court finds the production of records in PDF format on an USB flash drive adequately satisfied DCF's obligation under the June 8, 2018 Order, the subpoena and Rule 45. Thus, there is no occasion for the undersigned Magistrate Judge to certify facts to the District Judge or to issue an order for DCF to show cause why it should not be held in contempt.[67]

**D.      Requiring DCF to Produce the Requested ESI**

**1.      Plaintiff's Request for a Show Cause Order**

Plaintiff's Motion also requests the Court to issue an order requiring DCF to show good cause why it should not produce the requested ESI, *i.e.*, the native format and associated metadata for the records DCF produced. As stated above, there are two possible civil penalties for a finding of contempt, with one being to compel obedience with the court's order.[68] The Court assumes Plaintiff was asking it to order DCF to produce the

---

[66] *Lucre Management Group, LLC*, 365 F.3d at 875 (stating to be held in contempt, the court must find violation of a "specific and definite" court order).

[68] *See also Entech Sys., Inc. v. Bhaskar*, No. 97-2528-JWL, 1998 WL 164632, at *8 (D. Kan. Mar. 18, 1998) ("Civil contempt, as opposed to criminal contempt, is a sanction to coerce compliance with a court's order or to compensate for damages or losses suffered as a result of

requested ESI as a remedy for civil contempt. However, as stated above, the Court does not find the situation here warrants a recommendation of contempt. Thus, it will not issue the show cause order requested by Plaintiff.

### 2. Legal Standard Regarding Re-production of Documents in Native Format with Metadata

However, the Court does not wish to delay the issue of ESI production as Plaintiff could propound another subpoena and specifically request native format and metadata for the records produced, which would likely result in DCF making many of the same arguments it makes in its Response brief. Those arguments are: (1) it has already produced the requested information in PDF format and, per Rule 45(e)(1)(C), is not required to re-produce it in another format;[69] (2) they are not in possession of the ESI Plaintiff is seeking;[70] (3) even if DCF had the requested ESI, Plaintiff has not articulated what information the ESI could provide that is not readily available from the PDF documents;[71] (4) Plaintiff fails to identify any specific document which could be produced in native format with metadata or why the native format and metadata is relevant;[72] (5) the claims in this case are more than ten years old, so there is very little chance of significant, accessible information remaining in any computer system;[73] and (6) re-production of the PDF

---

noncompliance.") (citing *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir. 1998)).

[69] ECF No. 144-13; ECF No. 148, p. 5 n.2.
[70] *See* ECF No. 144-6, p. 1; ECF No. 144-7; ECF No. 144-10, p. 1; ECF No. 148, pp. 4-5 n.1.
[71] ECF No. 148, pp. 4-5 n.1.
[72] *Id.* at pp. 7-8 and n.3.
[73] *Id.* at pp. 4-5 n.1 and p. 8.

documents in native format with metadata, even if possible, would be cumulative, duplicative, burdensome and not proportional to the needs of the case.[74]

Thus, the issue for the Court to decide is whether DCF should be required to re-produce the 5,767 documents in native format with the associated metadata. Because DCF has already produced the records in one format, the Court finds Plaintiff must make a particularized showing of why she needs access to records in their native format with associated metadata.[75] In other words, Plaintiff must explain the relevancy of the requested ESI given the information already available from the PDF documents. In response, Plaintiff states the native format and associated metadata will reveal the author and creation dates for the documents and emails, and the author and creation dates for the revisions of the documents and emails.[76] Plaintiff insists this information is necessary and relevant for the five reasons discussed below.

---

[74] *Id.* at p. 9.

[75] *See, e.g., White*, 586 F. Supp. 2d at 1263-64 (ordering defendant to re-produce specific documents in native format with metadata intact because plaintiff explained the critical importance of such information to her case); *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 690 (D. Kan. 2014) (denying plaintiff's motion for defendant to re-produce documents in native format with metadata where plaintiff had not established a need for the metadata); *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR, 2011 WL 3490022, at *2 (D. Kan. Aug. 10, 2011) (requiring documents to be produced in native format where plaintiff explained why metadata was vital to her case); *Williams v. Sprint/United Mgmt. Co.*, No. CIVA03-2200-JWL-DJW, 2006 WL 3691604, at *7 (D. Kan. Dec. 12, 2006) (denying request for e-mails in their native format because plaintiffs failed to sufficiently explain the need for native format); *see also* Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment ("The term 'electronically stored information' is broad, but whether material that falls within this term should be produced, and in what form, are separate questions that must be addressed under Rules 26(b) [relevancy and proportionality] . . . .").

[76] ECF No. 144, p. 13.

### 3. Discussion

First, Plaintiff states some PDF pages produced by DCF contain "TFI numbers" at the top or bottom of the page indicating the records may not have originated from DCF files.[77] However, Plaintiff asked DCF about this in emails before filing the Motion and DCF indicated it placed bates-stamps on the documents using "TFI" as an identifier because TFI is a party to the litigation, not DCF.[78] The Court find this reasonable and not an indicator the records were not originated from DCF files. Plaintiff's counsel even responded in a return email that DCF's explanation makes sense.[79] Thus, the Courts finds this reason insufficient to require re-production of the records in native format with metadata intact.

Second, Plaintiff states the PDF documents were altered by the addition of bates-stamps and the words "Confidential Subject to Protective Order Smith v. TFI-Case No.: 17-02235."[80] The Court finds placement of bates-stamps and confidential markings on documents common in every case. Thus, the Court does not find this a sufficient reason to believe the documents were improperly altered or to require the documents to be re-produced in native format with metadata.

Third, Plaintiff complains some PDF pages contain a date stamp on the lower left corner, showing the document was printed on July 24, 2018, which is not the year the

---

[77] *Id.* at p. 4, ¶ 7.
[78] ECF No. 144-5, pp. 1-2; ECF No. 148, p. 11.
[79] ECF No. 144-5, p. 1.
[80] ECF No. 144, p. 5, ¶¶ 8-9.

information would have been stored in DCF's computer system.[81]   However, the Court finds this date was likely the date the records were printed for production as the Court ordered records to be produced to the Plaintiff, or to the Court for an in-camera review, by July 31, 2018.[82]   Thus, similar to the above, the Court finds this reason insufficient to require re-production of the documents in native format with metadata.

Plaintiff's fourth reason involves minor C.G.'s file, which was submitted to the Court for an in-camera review on or about July 30, 2018.[83]   Two affidavits accompanied C.G.'s file.  One was signed on July 27, 2018 by Renee Droessler, the business records custodian for the Chanute, Kansas DCF Office.[84]   She states a true, correct and accurate copy of C.G.'s records as maintained in the Chanute DCF file room are produced.[85]

The second affidavit was signed on July 30, 2018 by Elizabeth Valentine, the business records custodian for the Fort Scott, Kansas DCF Office.[86]   She states she searched the Fort Scott file room twice for C.G.'s records, but was unable to locate any records.[87]   She also states certain records were purged from the Fort Scott office before it moved locations in November of 2009.[88]   Ms. Valentine further says it's possible the files were purged at that time, but no record exists of what files were purged.[89]   However, from DCF's

---

[81] *Id.* at pp. 4-5 at ¶ 7 and p. 13.
[82] ECF No. 89, p. 23; *see* ECF No. 148, p. 6 (DCF states the information shows the date when printed by the legal department).
[83] ECF No. 101.  The Court did not originally order DCF to produce C.G.'s file, but DCF produced C.G.'s file in lieu of T.B.-W.'s file at the request of Plaintiff.  *See id.* at p. 2.
[84] ECF No. 144-2.
[85] *Id.*
[86] ECF No. 144-3.
[87] *Id.* at p. 2 at ¶¶ 3-4.
[88] *Id.* at ¶ 8.
[89] *Id.* at ¶¶ 8-10.

computer records, Ms. Valentine was able to locate the record of two cases involving C.G. which would have been in the Fort Scott file room.[90] She states she "printed the computer record from those cases which is incomplete but is a true and correct copy of the information contained in the agency computer program (KIDS) related to these cases."[91]

Plaintiff states because DCF admits C.G.'s physical file was purged from the Fort Scott file room, only the raw data stored in DCF's computer system would be available for production.[92] However, Ms. Valentine swears in her affidavit she printed out and produced all records relating to C.G. contained in the agency computer program. Plaintiff does not state how the raw data associated with these records (*i.e.*, the authors, creation dates and revision dates) will provide her additional, relevant information not already provided in the body of the PDF documents produced. This case concerns alleged inappropriate placement of foster children in a foster home where abuse was known, or should have been known, to occur. The Court cannot discern, and Plaintiff does not explain, how knowing the authors, creation dates, and revision dates of documents is relevant to inappropriate placements, or to any other claim or defense raised in this case.[93]

---

[90] *Id.* at ¶¶ 5-6.

[91] *Id.* at ¶ 7.

[92] ECF No. 144, p. 13.

[93] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); *see also AKH Co*., 300 F.R.D. at 690 (not ordering re-production of information where plaintiff had not established a need for the native format and associated metadata); *Williams*, 2006 WL 3691604, at *7 ("Here, other than arguing that ordering Defendant to reproduce the transmittal e-mails together with their attachments in native format would be more helpful to Plaintiffs in matching up the transmittal e-mails with their respective attachments, Plaintiffs fail to provide any other reason why they need the transmittal e-mails produced in their native format."). *Contra White*, 586 F. Supp. 2d at 1264 (ordering re-production of certain documents in native format because Plaintiff explained relevance of native format to determining the timing of, and reason for, Plaintiff's termination); *Linnebur*, 2011 WL

Plaintiff also contends some of C.G.'s records have a printed date of November 28, 2018, which would be after Ms. Droessler and Ms. Valentine signed their affidavits, meaning some of the documents may not be properly authenticated.[94]  The Court finds it reasonable to presume November 28, 2018 was the date the documents were printed for production to Plaintiff as the Court, after reviewing the documents in-camera, ordered them produced to Plaintiff by November 30, 2018.[95]  The Court, however, does find it odd DCF re-printed the documents in PDF format for production to DCF when they had already been printed in PDF format for the Court's review.  But, it is reasonable to infer DCF did so for consistency in bates-stamping the production as a whole to Plaintiff because the Court did preclude production of some documents.[96]  However, to ensure all pertinent records regarding C.G. in DCF's custody were produced to Plaintiff, the Court orders DCF to review its November 30, 2018 production to Plaintiff regarding C.G. for accuracy.  Ms. Droessler and Ms. Valentine, or the current business records custodians, should sign new affidavits certifying the production was complete or identifying the documents being produced now that were not produced before.  **DCF shall do so within 30 days of the date of this Order**.

---

3490022, at *2 (ordering re-production of certain documents where plaintiff explained the timing of her termination is a key issue and the metadata in the requested documents contain vital information about the author, creation date, and history of each, which is central to establishing the timeline of events leading up to her termination and is not present in the PDFs produced by defendant); *Helget v. City of Hays, Kans.*, 300 F.R.D. 496, 503 (D. Kan. 2014) (ordering production of metadata because of relevancy to actual claims in the case).

[94] ECF No. 144, p. 5 at ¶ 10 and p. 13.

[95] ECF No. 110, p. 2.

[96] *Id.* at p. 1.  (The Court ordered that some documents should be withheld or redacted.)

The fifth and final reason Plaintiff gives for production in native format with metadata is raised in her Reply. She alleges some of the documents DCF produced seem to be the product of spoliation.[97] As support, Plaintiff states some records appear to have been altered because they show content placed on DCF forms not in existence at the time the content was created.[98] For example, Plaintiff provides an affidavit from an expert in the information technology field.[99] The affidavit contains a partial image of a produced document showing a form date of July 2016 and a date of April 14, 2011 for the actual content of the document.[100] The expert states from an "ESI standpoint, either the information is in a different electronic format before being placed (during the discovery process) in DCF's form, or the information is created on DCF's form after the fact and backdated to the appropriate time frame for the foster child's file."[101]

Spoliation is a serious accusation to raise, especially when raised for the first time in a reply as the opposition has no chance to respond. Arguments raised for the first time in replies are normally deemed waived.[102] Also, from the emails Plaintiff attached to her

---

[97] ECF No. 154, p. 3, p. 12 and n.5.

[98] *Id.*

[99] ECF No. 154-1 at ¶ 3.

[100] *Id.* at ¶ 29. From the partial image provided, the Court cannot tell whether this is really a DCF form or a third-party form. Neither can the Court tell if DCF's employees filled in the form or whether a third-party contractor, like Defendant TFI, filled in the form. Thus, the reason for the discrepancy might lie with the third-party, and not DCF. *See* ECF No. 144-7, p. 1 (DCF states a review of the documents produced shows most are "prepared by TFI or a medical provider or law enforcement, etc."); ECF No. 148, pp. 4-5 n.1 (DCF states "for the majority of documents, they are not created by DCF but are received from contract providers, medical professionals, and other third parties and thus there is no metadata or native format in the possession of DCF.").

[101] ECF No. 154-1 at ¶ 29.

[102] *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *12, n.89 (D. Kan. Apr. 11, 2012).

Motion showing conferral with DCF prior to filing the Motion, it does not appear Plaintiff addressed this accusation during the conferral process. For these reasons, the Court will not compel production of native format and metadata for these documents at this time. However, the Court will order Plaintiff and DCF to confer regarding this issue. If DCF does not provide an adequate explanation for the discrepancy between the form dates and content dates of the documents at issue, Plaintiff may seek a telephone conference with the Court to discuss the issue in more detail. **Plaintiff and DCF shall confer within 30 days of the date of this Order.**

### 4.  Conclusion

In conclusion, the Court finds Plaintiff has not made a particularized showing of why re-production of the 5,767 pages of PDF documents in native format with associated metadata is relevant to the case at hand. Thus, the Court will not order such ESI to be produced. Before moving on, the Court makes a few additional comments. First, DCF is not a party to this action. The Court finds requiring a non-party to spend time and money to re-produce 5,767 pages of PDF documents in native format with metadata would be burdensome and not proportional to the needs to the case considering Plaintiff has provided little reason as to why the native format and metadata would be relevant.[103]

---

[103] *See* Fed. R. Civ. P. 26(b)(2)(C)(i), (iii) (stating the court, on motion or *on its own*, "must limit" discovery if it determines the discovery sought is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, or is irrelevant or disproportional to the needs of the case); Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *see also, e.g., AKH Co.*, 300 F.R.D. at 690 (considering the costs of re-producing the information already submitted to plaintiff in PDF format to be a valid reason not to require defendant to re-produce the information at issue).

Second, and more importantly, this whole issue could have been easily avoided if Plaintiff had conferred with DCF regarding format **before** DCF produced the 5,000 plus records in PDF form.[104] The email attachments to Plaintiff's Motion show Plaintiff's counsel did not reach out to DCF regarding the specific ESI or format requested until **after** the documents had been produced. The Court finds this particularly baffling when Plaintiff's counsel states she is "notorious" for requesting this type of ESI and ESI production has been an issue between DCF and Plaintiff's counsel in past cases.[105] It is unfair for Plaintiff to state DCF is being uncooperative and dilatory in producing the requested ESI when Plaintiff's counsel did not discuss ESI issues with DCF's counsel until after the records were produced.[106] At the same time, despite Plaintiff's subpoena not specifying format or defining ESI, DCF's counsel could have--and should have--reached out to Plaintiff's counsel before producing the documents in PDF format given the on-going struggle in other cases regarding ESI production.

---

[104] Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment ("Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information. . . . Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs."); *see, e.g., White*, 586 F. Supp. 2d at 1264-65 (noting discovery dispute could have been avoided if adequate conferral happened before production of documents).

[105] *See* ECF No. 154, p. 5.

[106] Plaintiff makes much of DCF not following the District's ESI guidelines; however, Guideline 26, the only guideline specifically applicable to Fed. R. Civ. P. 45, states: "Counsel issuing requests for ESI from non-parties should attempt to informally meet and confer with the non-party (or counsel, if represented). During this meeting, counsel should discuss the same issues regarding ESI requests that they would with opposing counsel as set forth in [Guideline] 11 above." Guideline 11 states "a party seeking discovery of ESI should notify the opposing party of that fact immediately . . . ." *See* ESI Guidelines at http://ksd.uscourts.gov/index.php/rules/. Plaintiff contends it sought ESI from the start, but from Plaintiff's briefs, it does not appear Plaintiff's counsel conferred with DCF's counsel regarding format until after production had occurred.

## E. Sanctions

In addition to a show cause order regarding contempt and compliance, Plaintiff asks for various sanctions against DCF under Rule 37(b)(2)(A) for failure to obey a discovery order. Plaintiff asks for the following sanctions against DCF: (1) designating the facts contained in the Amended Complaint to be taken as established; (2) prohibiting DCF from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence; (3) striking DCF's pleadings in whole or in part; (4) rendering a default judgment against DCF in favor of Plaintiff for the relief sought in Plaintiff's Amended Complaint; and (5) an award of reasonable expenses and attorney fees in making the Motion.[107] The Court denies these requests for sanctions.

First, as stated above, the Court does not find DCF failed to comply with its June 8, 2018 Order regarding the subpoena. Second, the sanctions Plaintiff is asking for, by their nature, apply to parties, and DCF is not a party. Additionally, case law suggests Rule 37 sanctions are inapplicable to subpoena-related orders regarding non-parties under Rule 45.[108]

DCF also asks for sanctions against Plaintiff for violating Rule 11(b). DCF contends Plaintiff's Motion contains misleading and/or false statements.[109] The Court has

---

[107] ECF No. 144, p. 14. *See* Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (iii), (v), and (vi) and 37(b)(2)(C). Plaintiff also asks the Court to deny DCF's motion to dismiss in whole or in part. However, that motion was denied as moot on June 5, 2019 because Plaintiff voluntarily dismissed DCF from the case. (*See* ECF Nos. 145, 153.)

[108] *In re: Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *6 and n.41 (D. Kan. July 7, 2010); *Warkins v. Piercy*, No. 16-MC-216-CM-GEB, 2016 WL 7188284, at *3 (D. Kan. Dec. 12, 2016).

[109] ECF No. 148, pp. 10-11.

thoroughly reviewed Plaintiff's Motion, Reply and all attached exhibits.  The Court does not find Plaintiff's statements to be misleading or false such that Rule 11 sanctions are warranted.[110]

### F.    Summary

Based on the above, the Court does not find DCF violated the June 28, 2018 Order by not producing documents in native format with metadata intact.  As such, the Court will not certify facts to the District Judge or issue an order for DCF to show cause why it should not be held in contempt.  Neither will the Court issue an order requiring DCF to show good cause why it should not re-produce the 5,767 pages of PDF documents in native format with associated metadata, or impose sanctions on either party.

However, as stated in Section II.D.3 above, within **30 days of the date of this Order**, the Court orders: (1) DCF to review its November 30, 2018 production to Plaintiff regarding C.G.'s file for accuracy.  After such review, DCF's business records custodians shall sign new affidavits certifying the production was complete or identifying the documents being produced now that were not produced before; and (2) Plaintiff and DCF to confer regarding the spoliation issue.  If DCF does not provide an adequate explanation for the discrepancy between the form dates and content dates, Plaintiff may seek a telephone conference with the Court to discuss the issue in more detail.

---

[110] *See, e.g., Scott v. Boeing Co*., 204 F.R.D. 698, 700 (D. Kan. 2002) (stating the court has discretion to determine whether an attorney's claim or argument warrants Rule 11 sanctions).

### III. Individual DCF Defendants' Motion to Stay Discovery (ECF No. 163)

As stated in Section I above, Plaintiff amended her complaint to add claims against five DCF employees in their personal capacities (referred to as "Individual DCF Defendants"). On July 11, 2019, the Individual DCF Defendants filed a Motion to Dismiss, which is pending before the District Judge.[111] On July 26, 2019, the Individual DCF Defendants filed a Motion to Stay Discovery pending a ruling on the Motion to Dismiss.[112]

On August 19, 2019, Plaintiff filed a Response to the Motion to Stay Discovery.[113] Plaintiff noted the Court previously ordered all deadlines stayed pending resolution of whether DCF and any DCF employees will be joined as Defendants.[114] This was done in anticipation of dispositive motions being filed by DCF and DCF employees regarding the Amended Complaint, and done so discovery against all Defendants could proceed simultaneously. In light of this order staying deadlines, Plaintiff asks the Court to deny the Motion to Stay as moot.[115] The Individual DCF Defendants did not file a reply.

Therefore, in light of its previous order staying all deadlines and no objection to the stay from the parties, the Court finds the Motion to Stay moot. Upon resolution of the Individual DCF Defendants' Motion to Dismiss, the Court will promptly set a discovery and scheduling conference to discuss setting dates for the completion of any remaining

---

[111] ECF No. 161.
[112] ECF Nos. 163 and 164.
[113] ECF No. 168.
[114] *Id.* at ¶ 2; ECF No. 125.
[115] ECF No. 168.

discovery[116] and the setting of other pretrial deadlines. As noted in its order granting Plaintiff's Motion for Leave to File a First Amended Complaint, Plaintiff has already procured much written discovery in this case, which should enable the parties to move on from written discovery and begin the next phases of discovery relatively quickly.[117] This stay on discovery shall not apply to the Court's orders in Section II.D.3. herein regarding DCF's production of documents regarding Plaintiff's subpoena.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Order Against State of Kansas Department for Children and Families to Show Good Cause Why it Should not be Held in Contempt and Motion for Sanctions (**ECF No. 143**) is **DENIED**[118] and (2) Individual Defendants' Motion to Stay Discovery (**ECF No. 163**) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th day of September, 2019.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[116] This will include setting a deadline for the Individual DCF Defendants to make their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), assuming their Motion to Dismiss is denied.
[117] *See* ECF No. 132, p. 3.
[118] *But see* Section II.D.3. *supra* for orders directing DCF and Plaintiff to follow up on certain items relating to DCF's production of documents regarding Plaintiff's subpoena.