IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COURTNEY SMITH,

        Plaintiff,

v.                                                                 Case No. 17-2235-JWB

TFI FAMILY SERVICES, INC., *et al.*,

        Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on a motion to dismiss by five individually-named Defendants[1] (hereinafter "the Individual Defendants"). (Doc. 161.) The motion is fully briefed and is ripe for decision. (Docs. 162, 170, 171.) For the reasons stated herein, the motion to dismiss (Doc. 161) is GRANTED.

**I. Facts**

The following facts are taken from the amended complaint (Doc. 134) and are presumed to be true for purposes of deciding the motion to dismiss.

The Kansas Department for Children and Families ("DCF") (formerly known as Social and Rehabilitation Services or "SRS") is an agency of the State of Kansas charged with administering the state's duty to look after the interests of foster children in DCF custody. (*Id.* at 5-7.) DCF is responsible for the safety, care, custody, placement, and supervision of DCF foster children. (*Id.*

---

[1] The five are: Candace Shively, Steve Fincher, Jay Clements, Angela Kruczynski, and Peggy Jordan (now known as Peggy Beck). These parties were added by the amended complaint and are sued in their individual capacities. (Doc. 134.) TFI Family Services, Inc. is the only other remaining Defendant. The State of Kansas DCF (including Secretary Laura Howard in her official capacity) was named as a Defendant in the amended complaint but was voluntarily dismissed by Plaintiff. (Doc. 145.)

at 7-8.) The Individual Defendants were employed by DCF at all times relevant to this suit. Plaintiff Courtney Smith was born in 1999, and was 19 years old on April 16, 2019, when the amended complaint was filed. (*Id.* at 5.)

TFI Family Service, Inc. ("TFI") is a private entity that contracts with DCF to provide placement and other services for children in DCF custody. (*Id.* at 10.) In October 2008, when Plaintiff was nine years old, she was placed in DCF custody pursuant to a court order. (*Id.* at 26.) In October 2008, DCF employee Angela Kruczynski referred Plaintiff to TFI for placement services, and in the same month TFI placed Plaintiff in the home of Delores and Earl Wilkins. (*Id.*) Plaintiff allegedly suffered physical and emotional abuse from 2008 through October 2009 from "adults residing in the Wilkins' home" (the complaint does not specify from whom) and Plaintiff witnessed abuse of other children in the home. (*Id.*) TFI had actual and constructive knowledge that Plaintiff was being abused but forced her to remain in the Wilkins' home. (*Id.* at 28.)

DCF received and investigated numerous hot-line calls about child abuse in the Wilkins home yet continued to place Plaintiff and other children there. (*Id.* at 2.) DCF allegedly received thirteen reports of foster children being abused or neglected in the Wilkins home between 2001 and October 2009. (*Id.* at 19.) DCF employee Jay Clements investigated these reports and determined in each case that a finding of "unsubstantiated" was warranted based on a "clear and convincing" standard of proof. (*Id.* at 20.) Clements therefore did not enter the alleged perpetrator's name in a central registry of identified abusers. (*Id.* at 17-18.) Plaintiff alleges that DCF was required to make a decision after every report of abuse as to whether to remove foster children from the Wilkins home, based on a preponderance of evidence standard, but DCF "refused to make a decision." (*Id.* at 17, 19.) While Plaintiff was in the Wilkins home from October 2008

through October 2009, DCF employees Peggy Jordan and Angela Kruczynski were allegedly "required to …but refused to make any determination or decision whether to remove" Plaintiff from the home. (*Id.* at 20.) DCF managers Steve Fincher and Candace Shively allegedly sanctioned and approved the practice "of failing to determine the safety of DCF foster children," including Plaintiff. (*Id.* at 21.)

DCF allegedly knew or should have known that TFI was failing to meet its contractual standards with DCF including by failing to report all incidents of maltreatment and that it was thereby endangering foster children including Plaintiff. (*Id.* at 31-32.) The Wilkins home was closed for placement of foster children in 2009 after DCF received multiple hot-line reports identifying adults in the Wilkins home as perpetrators of physical abuse. (*Id.* at 28). It was permanently closed as an unlicensed foster home in 2011. (*Id.*)

Counts 1 through 3 of the amended complaint assert claims against TFI for gross negligence, outrage, and deprivation of constitutional rights under 42 U.S.C. § 1983. Count 6 alleges a claim against the Individual Defendants under § 1983. Among other things, Count 6 alleges that the Individual Defendants, acting under color of state law and with deliberate indifference, caused a violation of Plaintiff's Fourteenth Amendment rights "not to be placed with a home not licensed for foster children, where child abuse is reported to occur," "to be free from harm," "to placement in a reasonable safe and secure environment and conditions," and "to be free from maltreatment while in foster care." (Doc. 134 at 42-46.) Plaintiff alleges some or all of the Individual Defendants referred her to TFI for foster care services knowing that TFI "was incompetent to determine appropriate placements" and "under-reported maltreatment of DCF foster children." (*Id.* at 42.) Plaintiff alleges that some or all of the Individual Defendants failed to protect her by placing her in a home with adults who had been identified as persons who abused

3

children, by failing to adequately monitor her, and by failing to respond appropriately to allegations of child abuse. (*Id*. at 44.)

The Individual Defendants contend the § 1983 claim against them is barred by the Kansas statute of limitations and/or statute of repose, and that the allegations otherwise fail to state a claim for relief under § 1983. (Doc. 162.) In response, Plaintiff essentially argues that her claim did not accrue until she received some confidential DCF documents on November 30, 2018, that her amended complaint relates back to the filing of the original complaint, pursuant to Rule 15, and was therefore timely, and that her allegations are sufficient to state a § 1983 claim. (Doc. 170.) For the reasons set forth herein the court finds that the § 1983 claim against the Individual Defendants is barred by the statute of limitations.

**II. Standards**

1. Rule 12(b)(6). In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support her claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

Dismissal based on a statute of limitations is appropriate under Rule 12(b)(6) "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Glaser v.*

*City & Cty. of Denver, Colorado*, 755 F. App'x 852, 854 (10th Cir. 2019), *cert. denied sub nom. Glaser v. Denver, Co.*, No. 18-9096, 2019 WL 4921601 (U.S. Oct. 7, 2019) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). *See also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("[i]f the allegations … show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.") When the facts and dates are not disputed, the court may as a matter of law determine when a cause of action has accrued. *Lawson v. Okmulgee Cty. Crim. Justice Auth.*, 726 F. App'x 685, 689 (10th Cir. 2018) (citation omitted.)

     2. <u>Statute of limitations on § 1983 claims</u>. "A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983." *Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008). The limitations period is ordinarily governed by the forum state's limitation period for personal-injury torts. *Wilson v. Garcia*, 471 U.S. 261, 279 (1985) (superseded in part on other grounds by 28 U.S.C. § 1658). In Kansas, the two-year limitation period in K.S.A. 60-513(a)(4) governs § 1983 claims. *Brown v. Unif. Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006). State law also governs any tolling of that period, although federal law might also allow equitable tolling in rare circumstances. *Mondragon*, 519 F.3d at 1082. Federal law alone determines the date on which a claim accrues – that is, the date on which the limitations period is triggered. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Mondragon,* 519 F.3d at 1082.

     In *Wallace*, the Supreme Court emphasized that the accrual date of a § 1983 claim is a question of federal law. *Wallace*, 549 U.S. at 388. The Court explained that federal rules governing accrual generally conform to common law tort principles. *Id.* Under those principles, the standard rule is that accrual occurs "when the plaintiff has 'a complete and present cause of

action'" – that is, "when 'the plaintiff can file suit and obtain relief.'" *Id.* (citations omitted.) But *Wallace* considered a "refinement" with respect to a § 1983 claim for unlawful arrest because of the common law's distinctive treatment of the tort of false imprisonment. *Id.* At common law, that tort included false arrest, and it provided the closest analogy to the § 1983 claim considered in *Wallace.* Such a claim only accrued at common law once the alleged false arrest or imprisonment ended. *Id.* Accordingly, *Wallace* ruled that a § 1983 claim for false arrest accrued once the person's unlawful arrest ended – that is, when the person was bound over for trial by a judge. *Id.* at 389. After *Wallace*, the Tenth Circuit said it determines the accrual date of a plaintiff's § 1983 claim by looking to the accrual rule for the common-law tort most analogous to her § 1983 claim. *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1215 (10th Cir. 2014) (quoting *Wallace*, 549 U.S. at 388.)

In *McDonough v. Smith*, 139 S. Ct. 2149 (2019), the Supreme Court noted that although the time of accrual is presumptively when the plaintiff has a complete and present cause of action, "the answer is not always so simple." *Id.* at 2155. A claim may accrue at a later date "[w]here, for example, a particular claim may not realistically be brought while a violation is ongoing…." *Id.* The accrual analysis begins with identifying the specific constitutional right alleged to have been infringed, and then is guided by common law principles governing analogous torts. *Id.* at 2155-56.

Unaddressed in either *Wallace* or *McDonough* was the federal discovery rule frequently applied by lower courts in determining accrual of § 1983 claims. That rule – at least in one formulation - holds that a claim accrues "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *See Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). The Tenth Circuit has continued to apply this rule after

6

*Wallace*. *See Jenkins v. Chance*, 762 F. App'x 450, 455 (10th Cir. 2019); *Alemar v. Raemisch,* 762 F. App'x 544, 546 (10th Cir. 2019). *Cf. Varnell,* 756 F.3d at 1216 (noting that "even if" the discovery rule applied to the § 1983 claim, the claim was barred). Other courts have similarly treated the discovery rule as an exception to the general rule of *Wallace* that a claim accrues when a plaintiff can first sue and obtain relief. *See e.g., Jardin De Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 133 (1st Cir. 2014) (claim normally accrues when plaintiff can first sue but "to the extent that the facts necessary to bring a claim are unknown, the discovery rule may delay accrual until such facts 'are or should be apparent to a reasonably prudent person similarly situated.'") These cases indicate the Tenth Circuit will likely continue to apply the federal discovery rule when the fact of injury or the cause of the injury may not be apparent to a reasonable person. *Cf.* 51 Am. Jur. 2d, *Limitation of Actions* § 158 ("The discovery rule operates as an exception to the accrual rule when a plaintiff does not know, or could not through the exercise of reasonable diligence know, of the wrong, whether the wrong is a breach of a tort duty or a breach of contract."); *Rotella v. Wood,* 528 U.S. 549, 555 (2000) ("Federal courts … generally apply a discovery accrual rule when a statute is silent on the issue…."); *CTS Corp. v. Waldburger,* 573 U.S. 1, 8 (2014) (a claim accrues in a personal injury action "when the injury occurred or was discovered.") In *Lawson* the Tenth Circuit said it is "well settled that a 'civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Lawson*, 726 F. App'x at 690-91 (quoting *Baker v. Bd. of Regents,* 991 F.2d 628, 632 (10th Cir. 1993)). "The injury in a § 1983 claim is the violation of a constitutional right, and such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Id.* at 691 (citing *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir. 1998)).

**III. Analysis**

1. Statute of limitations – accrual of claim. For purposes of a § 1983 claim, the relevant injury is the alleged constitutional violation. *Estate of Roemer v. Johnson,* 764 F. App'x 786, 790 (10th Cir. 2019) (citation omitted.) This requires the court to first identify the constitutional violation and locate it in time. *Id.* Plaintiff alleges she was deprived of Fourteenth Amendment rights "not to be placed with a home not licensed for foster children, where child abuse is reported to occur," "to be free from harm," "to placement in a reasonable safe and secure environment and conditions," and "to be free from maltreatment while in foster care." (Doc. 134 at 42-46.) The most analogous common law tort is likely one involving special relations - including one person who has lawful custody of another - that gives rise to a common law duty to provide aid or protection. *See Restatement (Second) of Torts* § 314A. Neither party argues there are any unique common law guidelines pertaining to accrual of this tort. If the "standard" rule of *Wallace* applies, then Plaintiff's claim accrued no later than October 2009. Plaintiff was allegedly abused and witnessed abuse in the Wilkins home from October 2008 through October 2009. (*Id.* at 26.) Shortly after being placed in the home, Plaintiff told her TFI caseworker she had been abused and she repeatedly told TFI about abuse suffered by children in the home. (*Id.* at 28.) The Wilkins home was closed for placement of foster children in 2009 after multiple hotline reports of child abuse were received. (*Id.*) The facts in the amended complaint thus show the alleged violations of Plaintiff's rights by the Individual Defendants must have occurred no later than October 2009. Not later than that point in time, Plaintiff had a present and complete cause of action against the Individual Defendants for any deprivation of a constitutional right to be free from harm with respect to her foster placement in the Wilkins home, such that Plaintiff could have sued upon the claim.

Plaintiff nevertheless argues that "when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact." (Doc. 170 at 7.) She further argues she "did not know or have reason to know her § 1983 claim accrued until November 30, 2018, when DCF produced confidential records." (*Id.* at 8.) Essentially, she argues that she did not have knowledge of the Individual Defendants' involvement until November 2018. For reasons discussed infra, the court concludes these arguments are unavailing.

For purposes of the instant motion, the court will assume the federal discovery rule applies to Plaintiff's § 1983 claim. *Cf. Varnell.*, 756 F.3d at 1216 (finding claim barred "even if" discovery rule applies). It bears pointing out, however, that courts have not been clear or consistent in spelling out the knowledge required to trigger accrual under the discovery rule. In *United States v. Kubrick,* 444 U.S. 111 (1979), a claim for medical malpractice under the Federal Tort Claims Act, the Court rejected an argument that the claim did not accrue until the plaintiff had reason to know that the medical treatment he received was legally blameworthy or constituted malpractice. *Id.* at 119-121. The Court assumed a malpractice claim might not accrue until a plaintiff was aware of his injury and its cause,[2] but it was "unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights" delayed accrual. *Id.* at 122. "Accordingly, the Court held that the plaintiff's cause of action accrued on the date that he learned that he was injured, even if he did not know that the alleged tortfeasor was negligent, because, as a plaintiff "armed with the facts about the harm done to him, [he] can protect himself by seeking advice in the medical and legal community." *Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003) (quoting *Kubrick*,

---

[2] The opinion in *Kubrick* was somewhat elusive as to whether knowledge of the cause, in addition to knowledge of the injury, was required for accrual. The Court observed that "the Court of Appeals recognized that the general rule under the [Federal Tort Claims Act] has been that a tort accrues at the time of the plaintiff's injury, although it thought that in medical malpractice cases the rule had come to be that the [limitations period] did not begin to run until the plaintiff has discovered both his injury and its cause." *Kubrick*, 444 U.S. at 120. The Court continued: "But even so- and the United States was prepared to concede as much for present purposes – the latter rule would not save Kubrick's action since he was aware of these essential facts…." *Id.*

444 U.S. at 123). In a subsequent case involving a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Supreme Court rejected an argument that the statute of limitations did not begin to run until the plaintiff discovered both his injury and a pattern of racketeering. The Court said "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood,* 528 U.S. 549, 551 (2000). More recently, in a civil enforcement action for fraud, the Court observed that "[t]he discovery rule exists in part to preserve the claims of victims who do not know they are injured and who reasonably do not inquire as to any injury." *Gabelli v. S.E.C.*, 568 U.S. 442, 451 (2013). *Cf. SCA Hygiene Prods. Aktiegbolag v. First Quality Baby Prods., LLC,* 137 S. Ct. 954, 962 (2017) (in a patent action, stating that the discovery rule generally provides that the limitations period begins "when the plaintiff discovers or should have discovered the injury giving rise to the claim.")

In *Alexander*, the Tenth Circuit addressed a § 1983 claim against the City of Tulsa and others for their alleged complicity in race-based riots that occurred decades before a claim was filed. *Alexander,* 382 F.3d at 1215. The court said a claim accrues under the discovery rule "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action," and more specifically that a civil rights action accrues "when facts that would support a cause of action are or should be apparent." *Id.* (citation and quotation marks omitted.) The plaintiffs in *Alexander* argued their claim did not accrue at the time of injury because "they did not know the level of culpability of the City…." *Id.* In concluding that the plaintiffs' claim was barred, the court of appeals observed that a plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Id.* at 1216. "Rather, we focus on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful

10

conduct caused the harm." *Id.* Moreover, "[i]n this context, a plaintiff must use reasonable diligence in seeking to discover the facts giving rise to a claim for relief." *Id.* Applying those standards, the court rejected the plaintiffs' argument that accrual of a cause of action is delayed "until a plaintiff has detailed knowledge of the level of culpability of each of the actors involved." *Id.* The court found "Plaintiffs' injuries and the general cause of those injuries were obvious in the aftermath of the [r]iot," and case law "requires nothing more" to start the statute of limitations. *Id.*

In the instant case, the amended complaint shows beyond dispute that Plaintiff was aware by October 2009 that she had suffered the abuse she now alleges was proximately caused by the Individual Defendants; indeed, she reported the abuse to TFI while she was still in the Wilkins home. This shows Plaintiff had reason to know at that time that she had been deprived of her asserted rights to a safe placement and to be free from harm in foster care, and that this harm resulted in part from the decision to place her in the Wilkins home. The amended complaint thus shows Plaintiff had reason to know of the cause of her alleged injuries in October of 2009. The gravamen of Plaintiff's claim is that she was harmed by the Individual Defendants' placement decision and their failure to remove her from the Wilkins home. But the fact that DCF was responsible for placement decisions was known or should have been known in October of 2009. It would have been apparent to a reasonable person at the time of the injury that - as Plaintiff alleges in the amended complaint - DCF bore responsibility for the placement and safety of children placed in DCF custody. That responsibility was not a hidden or concealed fact; it was a matter of public record. Thus, in 2009 a reasonable person would have been on notice that conduct by DCF may have caused or contributed to Plaintiff's alleged harm.

11

Plaintiff argues the claim did not accrue at that point because she did not "have reason to know the extent of DCF Employees['] misconduct" until DCF produced "some confidential records" on November 30, 2018. (Doc. 170 at 9.) As an initial matter, Plaintiff's reference to unspecified records does not alter the fact that the allegations in the amended complaint show that a reasonable person would have known by October 2009 that Plaintiff was suffering abuse as a result of being placed in the Wilkins home and that DCF, as well as TFI, was responsible for her placement. Moreover, *Alexander* holds that a plaintiff need not have detailed knowledge of the level of culpability of each of the actors involved to trigger the statute of limitations. *Alexander,* 382 F.3d at 1216. *Kubrick* also indicates that knowledge that a defendant's conduct violated legal standards is not a requirement of the discovery rule. *Kubrick,* 444 U.S. at 125 (requiring awareness of facts that would alert a reasonable person to the possibility that a legal duty was breached "would go far to eliminate the statute of limitations as a defense.") Contrary to Plaintiff's suggestion, the discovery rule has not been construed to mean that a plaintiff must understand that her legal rights have been violated before a claim accrues. It is knowledge or notice of facts underlying the injury and causation that trigger accrual of a claim. Because Plaintiff knew or should have known by October 2009 of facts pertaining to the existence and cause of her alleged injury, her claim accrued at that time.

2. <u>Statute of limitations – tolling</u>. Section 60-515(a) of the Kansas Statutes provides in part that "if any person entitled to bring an action … at the time the action accrued … is less than 18 years of age, … such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced … more than eight years after the time of the act giving rise to the cause of action." It is not clear the extent to which

Plaintiff is invoking this provision; she mentions it only in a footnote.[3] (Doc. 170 at 7, n.5.) At any rate, the court finds this provision does not operate to make Plaintiff's claim against the Individual Defendants timely.

Plaintiff's claim against the Individual Defendants accrued by October 2009 and was first asserted in the amended complaint filed August 19, 2019. Plaintiff was born in 1999 and was already 19 years old when the amended complaint was filed. (Doc. 134 at 5.) Leaving aside the eight-year repose provision in the second half of section 60-515(a), the first part of that section would only have allowed Plaintiff to bring her claim against the Individual Defendants up until her nineteenth birthday. Yet it is clear from Plaintiff's allegations that the amended complaint was filed after that date.[4] Plaintiff thus cannot claim the benefit of tolling under 60-515(a) with respect to the filing of the amended complaint. *See Varnell*, 756 F.3d at 1214.

The undisputed allegations also show the claim was filed beyond the eight-year statute of repose in K.S.A. 60-515(a). The Individual Defendants argue this fact alone means the claim was extinguished. (Doc. 171 at 6) (citing *Cosgrove v. Ks. Dept. of Soc. and Rehab. Svcs.*, 162 F. App'x 823 (10th Cir. 2006)). The court notes that the unpublished *Cosgrove* decision has been rejected by the Tenth Circuit for applying the wrong statute of limitations to a § 1983 claim. *See Varnell*, 756 F.3d at 1213. In view of Plaintiff's failure to file her claim within one year after turning 18, however, the court need not decide here what effect, if any, the eight-year provision in 60-515(a)

---

[3] Plaintiff does not expressly argue for tolling under K.S.A. 60-515(a), although she mentions her minor status and argues that her consequent lack "of an adult's understanding" means her claim did not accrue in 2009. (Doc. 170 at 9.) Plaintiff cites no Tenth Circuit law indicating that federal accrual rules delay the accrual of a claim due to a plaintiff's status as a minor. Rather, tolling due to minor status is governed by state law and is addressed in K.S.A. 60-515.

[4] Plaintiff's initial complaint was filed on April 16, 2017, and Plaintiff was 17 years old at that time. (Doc. 1 at 4.) Although Plaintiff has alleged that she was born in 1999, Plaintiff's pleadings do not allege the month and day of her birth. Because Plaintiff was born in 1999, her birthday must have been no later in the year than April 16, meaning the amended complaint filed in August of 2019 was filed beyond Plaintiff's nineteenth birthday.

13

might have had on the claim. Plaintiff cannot claim the benefit of tolling under 60-515 in any event because she missed the one-year window for filing after turning 18.

      3. <u>Relation back under Rule 15</u>. Plaintiff alternatively suggests that her amended complaint satisfied the one-year window in section 60-515(a) for filing after turning age 18 because of the "relation-back" doctrine of Rule 15. (Doc. 170 at 12.) Plaintiff argues that her claim against the Individual Defendants relates back to April 16, 2017, the date of the initial complaint, under Fed. R. Civ. P. 15(c)(1)(C). That rule provides in part that an amendment relates back to the date of the original pleading if the following are present: 1) the amendment changes the party or the naming of the party against whom a claim is asserted; 2) the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading; and 3) within the time provided by Rule 4(m) for serving the complaint, the party to be brought in by amendment: i) received such notice of the action that it will not be prejudiced in defending on the merits, and ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. *Id.*

      Plaintiff argues the Individual Defendants do not claim prejudice; that they "had constructive notice of the lawsuit within the Rule 4(m) period from the public filing" of the complaint; that the Individual Defendants further had constructive notice because DCF's general counsel was aware in September 2017 that TFI was blaming DCF for faulty investigations of foster children in the Wilkins home; and that "[b]ut for a mistake … in understanding the role of DCF Employees in this lawsuit," Plaintiff would have included them in the initial complaint, something the Individual Defendants knew or should have known. (Doc. 170 at 14-15.)

      The court concludes Plaintiff has failed to allege facts showing that the Individual Defendants "knew or should have known that the action would have been brought" against them

"but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Plaintiff contends the requirement is satisfied because she had a mistaken belief at the time of the initial pleading that TFI was solely responsible for the harm to her. (Doc. 170 at 15.) Aside from the fact that this assertion is void of any substance, it fails to address why the Individual Defendants should have known the action would have been brought against them but for a mistake concerning their respective roles and that of TFI. In applying this provision, courts ask "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original.) The question is whether the defendant knew or should have known "it would have been named as a defendant but for an error." *Id.*

In *Krupski*, it was clear from allegations in the complaint that the plaintiff "meant to sue the company that 'owned, operated, managed, supervised and controlled'" the ship on which she was injured. *Id.* at 554. The plaintiff mistakenly alleged that Costa Cruise Lines performed those roles, unaware that this entity was merely a ticketing agent and that an affiliated company named "Costa Crociere, S. p. A." was the one that actually operated and managed the ship. In finding that a later amendment adding Costa Crociere related back, the Supreme Court said Costa Crociere should have known that the plaintiff's failure to name it in the first instance was due to a mistake concerning the proper party's identity. *Id.* at 554-55. Costa Crociere obviously knew in those circumstances that it was the entity that operated and controlled the ship, such that a claim against the company that "owned, operated, managed, supervised and controlled" the ship in the original complaint would clearly have named Costa Crociere but for a mistake by the plaintiff. *Id.* at 555 ("Costa Crociere should have known … that it was not named as a defendant in that complaint

15

only because of [plaintiff's] misunderstanding about which 'Costa' entity was in charge of the ship").

The instant case is materially different. Plaintiff does not articulate why the Individual Defendants should have known that Plaintiff would have sued them but for some misunderstanding. Plaintiff alleges that she lacked knowledge concerning the roles the Individual Defendants played in her placement, but she cites nothing in the initial complaint that should have alerted the Individual Defendants that Plaintiff intended to or would have sued them had it not been for a misunderstanding by Plaintiff as to their roles. In fact, the allegations and claims against TFI in the initial complaint are restated essentially verbatim against TFI in the amended complaint. (*See* Docs. 1, 134.) The amended complaint adds a new claim against the Individual Defendants and adds various new allegations about their knowledge and conduct, but it does not indicate that the claims in the initial complaint were mistakenly asserted against TFI because of a misunderstanding about the roles of the Individual Defendants. The amended complaint simply adds new claims and allegations against new parties; it does not reflect a mistaken attribution of one party's wrongdoing to another party. Plaintiff does not address these facts in her Rule 15 arguments or explain why each Defendant should have nevertheless realized that they would have been sued in the original complaint absent a mistake by Plaintiff as to their roles. Although "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity," a defendant "who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Krupski,* 560 U.S. at 550. Nothing in the amended complaint or elsewhere indicates the Individual Defendants should have known that Plaintiff would have named them as defendants in the original complaint but for a

16

mistake concerning identity. *Id.* at 553 ("the question … is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant.") As such, the § 1983 claim against the Individual Defendants in the amended complaint does not qualify for relation-back under Fed. R. Civ. P. 15(c)(1)(C).

"Statutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' … represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (citation omitted.) In this case, the allegations in the amended complaint show that Plaintiff's § 1983 claim against the Individual Defendants accrued by October 2009, that Plaintiff cannot claim the benefit of tolling under K.S.A. 60-515(a) or on any other basis, that the amended complaint does not relate back to the filing of the original complaint, and that Plaintiff's § 1983 claim against the Individual Defendants is barred by the two-year statute of limitations in K.S.A. 60-513(a).

**IV. Conclusion**

The Motion to Dismiss by the Individual Defendants (Doc. 161) is GRANTED. Count 6 of the amended complaint against Defendants Candace Shively, Steve Fincher, Jay Clements, Angela Kruczynski, and Peggy Jordan [aka Peggy Beck] is hereby DISMISSED WITH PREJUDICE based on the statute of limitations.

IT IS SO ORDERED this 14th day of November, 2019.

                                                                                       s/ John W. Broomes  
                                                                                       JOHN W. BROOMES  
                                                                                       UNITED STATES DISTRICT JUDGE